STATE, *ex rel.* MOOSE, ATTORNEY GENERAL *v.* SOUTHERN SAND & MATERIAL COMPANY.

Opinion delivered May 18, 1914.

1. STATE—SAND AND GRAVEL—NAVIGABLE STREAMS—CONTROL.—The State having dominion over the sand and gravel in the river beds of navigable streams, may require corporations taking sand and gravel therefrom to pay the State therefor. (Page 158.)

2. STATE—NAVIGABLE STREAMS—SAND AND GRAVEL.—A statute requiring payment to the State for sand and gravel taken from the beds of navigable streams does not levy a tax, but provides a method of utilizing the common property of the State for the benefit of the citizens. (Page 159.)

3. STATE—NAVIGABLE STREAMS—SAND AND GRAVEL.—Act 265, Acts 1913, requiring every one who desires to take sand or gravel from the beds of navigable streams to notify the Attorney General, and requiring corporations, but not individuals, to pay therefor, *held* not to provide an unreasonable requirement. (Page 159.)

4. CONSTITUTIONAL LAW—CITIZENS—CORPORATIONS.—Corporations are not regarded as citizens within the meaning of art. 2, § 18, Const. of 1874, which provides that no privileges or immunities shall be granted to any citizen or class of citizens upon terms which shall not equally belong to all citizens. (Page 159.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The title to the bed of navigable rivers within this State is vested in the State in trust for the use of the public. 53 Ark. 314-319, 323.

The *jus privitum,* the common-law right which the King enjoyed in the soil of the bed of navigable waters, and the *jus publicum,* the right vested in Parliament to use and control both the land and water, both became a part of the power vested in the Legislatures of the different States of this country upon their creation; and the State, through its Legislature, has the right to dispose of the bed of a navigable stream in the same manner as any of its other public property. Farnham on Law of Waters and Water Rights, §§ 212-215; 93 N. Y. 129-155; 21 Law Ed. (U. S.) 801; 100 Fed. 714-717; 40 Pac. 92, 93; 50 Pac. (Cal.) 277-285; 38 Law Ed. (U. S.) 333-351; 49 S. W. (Tex.) 721, 722; Gould on Waters, § 36; 35 S. E. (Ga.) 375-377.

The rule is stated by the United States Supreme Court as follows: "It is the settled rule of law in this court that absolute property in and dominion and sovereignty over the soils under the tide waters were reserved to the several States, and the new States since admitted have the same rights, sovereignty and jurisdiction in that behalf as the original States possess within their respective borders." 35 Law Ed. (U. S.) 971-982, and authorities there cited. See, also, 57 Law Ed. (U. S.) 490-496; 54 *Id.* 95-100; 51 *Id.* 956-973.

It follows, therefore, that if the State has title to the bed of navigable streams within her borders, that she may dispose of as other parts of the public domain (subject, in the case of such streams, to the rights of navigation and fishery), by grant, sale or lease, she has the right to sell the deposits on such beds, consisting of sand or gravel. And the act in question is a *sale* by the State of her sand and gravel, and not a *tax.*

2. While the State holds the bed of the stream in trust for the use of the public, that trust is merely to see that navigation is kept open and free, and that the citizens of the State are not interfered with in their common right of fishery. As is said by Professor Farnham in his criticism of the Wisconsin case relied on by appellee, 58 L. R. A. 93: "The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, *or can be disposed of without any substantial impairment of the public interest in the lands and water remaining.*" Farnham, Water and Water Rights, § 173. See, also, 40 Pac. (Ore.) 92; 53 Pac. (Wash.) 545; 16 Ann. Cases (Wash.), 196 and notes; 46 L. R. A. (N. S.) 363-369.

That the sand and gravel in the bed of the river are the property of the State which no person or corporation has any right to take and appropriate as against the State without her consent and license, is supported by a recent New York case. See, 140 N. Y. 333, 339, 340.

For the distinction between the title of the State to the water in navigable streams, and the title to the soil in the bed of the streams, see 44 Am. Rep. (N. Y.) 393-399.

*John W. Newman,* for appellee.

1. By the acts of Congress forming the Territory, and admitting the State of Arkansas into the Union, the State took title to her lands subject to the provision that "the Mississippi and Missouri rivers and the navigable waters flowing into them,  *  *  *  shall be common highways and forever free to the people of the said Territory and to the citizens of the United States without any tax, duty or impost."

Under these provisions the State took the same title to the beds of inland navigable rivers that the King of England, under the common law, held in the lands covered by the tidal waters in that country. 12 How. (U. S.) 442, 13 Law Ed. 1058; 152 U. S. 1-57; 38 Law Ed. 331-352.

See, also, 16 Pet. 367-410; 10 Law Ed. 997-1013; 15 How. 426, 14 Law Ed. 757-760; 18 How., 15 Law Ed. 270.

The authorities are uniform to the effect that the title of the State to the beds of navigable streams within its borders, is in trust for the use of the public, a fact which this court recognized in a case wherein a gravel bar in the White River was involved. 53 Ark. 323; 73 Ark. 236. See, also, 227 U. S. 229, 57 Law Ed. 490-496; 186 Fed. 426; 146 U. S., 36 Law Ed. 1018; 1 Vattel, § § 239-246; 18 L. R. A. 670; 12 L. R. A. 583-585. Wherever the question has arisen, the taking of sand and gravel from the beds of navigable rivers has been placed in the same class with the taking of water, fish, ice, etc. 38 Pa. St. 380; 7 Allen 166; 1 Farnham on Waters, 652; 83 Tenn. 209; Hall on Seashore (2 ed.), 92-186.

Sand and gravel continually shift and drift about in the bed of a stream within a general movement down stream, and with respect to the title and use thereof, the language of this court in regard to fishing, in the *Mallory* case, 73 Ark. 236-249, is applicable: "The transitory nature of the property renders the benefit so diffusive that all may join in the enjoyment thereof, and for that reason the sovereign holds as the representative of the public, so as to regulate and protect the common use."

See, also, 89 N. W. (Wis.) 839, 58 L. R. A. 93, cited with approval in the *Mallory* case, *supra*. 16 Pet. 367.

2. The right of the public to use the water, fish, sand, etc., is secondary to the right of navigation, and must give way when the improvement of navigation and commerce demand it. Of this matter the Congress of the United States has absolute control, and has exercised that control in the passage of the Rivers & Harbors Act of September 19, 1890, 26 Stat. at Large 454, which, in part, provides as follows: "That it shall be unlawful * * * under any act of the legislative assembly of any State, * * * to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of the channel of said navigable water of the

ARK.] STATE, *ex rel. v.* SOUTHERN S. & M. Co. 153

United States, unless approved and authorized by the Secretary of War."

The act of Congress controls, and the compliance with the rules laid down by the War Department pre-vents any lawful interference by the State. 174 U. S. 689-708; 96 U. S. 24 L. Ed. 668; 32 Fed. 9; 140 U. S. 35 Law Ed. 603; 100 Fed. 714; 41 Atl. 18; 93 U. S., 23 L. Ed. 782.

3. The act confers such arbitrary power upon the Attorney General, with reference to his choice of customers and fixing the price for the sand and gravel, or withdrawing it from the market altogether, as to render it void. 49 Md. 217; 118 U. S. 356, 30 L. Ed. 220-227.

McCulloch, C. J. The General Assembly of 1913 enacted a statute entitled, "An Act to protect the beds of all navigable streams in the State of Arkansas," and, after reciting that "the navigable streams of Arkansas belong to Arkansas, and the sand and gravel bars of same belong to Arkansas," provides:

"Section 1. That it shall be unlawful for any railroad company, corporation or company or person of any kind whatever to take sand or gravel from any sand or gravel bar of any navigable stream in this State without first notifying the Attorney General of the same, and then by his consent, the said railroad company, corporation or company may take from said navigable stream sand or gravel by paying into the State treasury the sum of not less than four cents per cubic yard for sand, and not less than five cents per cubic yard for gravel. *Provided,* the sums collected under this act shall be placed to the credit of the general revenue fund." Act No. 265, p. 1088, Acts of 1913.

The Attorney General instituted this action for the benefit of the State against appellee, a domestic corporation, alleging that the latter had been taking and removing sand and gravel from the bed of the Arkansas River without the consent of the State and without paying or offering to pay into the treasury of the State the price prescribed by statute; and praying for a discovery of

the amount of sand and gravel thus taken, and for a decree for the price of same.

The court sustained a demurrer to the complaint on the ground that the statute is void.

The contention of appellee through its learned counsel is that the State's ownership of the beds of navigable rivers is merely as trustee for the use of its citizens without any such proprietary interest as would give authority to sell the same, or any part thereof, or to grant special privileges therein.

It may be conceded without further controversy that the rights held by the State are as trustee for its citizens, that being true as to all property to which the State holds title.

In the case of *Knight* v. *United States Land Association,* 142 U. S. 161, Mr. Justice Lamar, speaking for the court, repeated the rule which had often been announced in substance in former decisions:

"'It is the settled rule of law in this court that absolute property in, and dominion and sovereignty over, the soils under the tide waters in the original States were reserved to the several States, and that the new States since admitted have the same rights, sovereignty and jurisdiction in that behalf as the original States possess within their respective borders."

In a very recent case, decided by the same court, it was said in the opinion that "it was settled long ago by this court, upon a consideration of the relative rights and powers of the Federal and State Governments under the Constitution, that lands underlying navigable waters within the several States belong to the respective States in virtue of their sovereignty, and may be used and disposed of as they may direct, subject, always, to the rights of the public in such waters and to the paramount power of Congress to control their navigation so far as may be necessary for the regulation of commerce among the States and with foreign nations." *Scott* v. *Lattig,* 227 U. S. 229.

Questions relating to the source of the State's title constitute a broad field in which much learning may be displayed; but those questions are so well settled, and have been so concisely stated in many decisions that it is an useless task to pursue that subject. The best statement of the law on that subject which we can find is in an opinion of the New York Court of Appeals, and we take the liberty of quoting at length therefrom as follows:

"From the earliest times in England the law has vested the title to, and the control over, the navigable waters therein, in the Crown and Parliament. A distinction was taken between the mere ownership of the soil under water and the control over it for public purposes. The ownership of the soil, analogous to the ownership of dry land, was regarded as *jus privatum,* and was vested in the Crown. But the right to use and control both the land and water was deemed a *jus publicum,* and was vested in Parliament. The Crown could convey the soil under water so as to give private rights therein, but the dominion and control over the waters, in the interest of commerce and navigation, for the benefit of all the subjects of the kingdom, could be exercised only by Parliament.  *  *  *  In this country the State has succeeded to all the rights of both Crown and Parliament in the navigable waters and the soil under them, and here the *jus privatum* and the *jus publicum* are both vested in the State. In England, Parliament had complete and absolute control over all the navigable waters within the kingdom. It could regulate navigation upon them, could authorize exclusive rights and privileges of navigation and fishing, could authorize weirs, causeways and dams for private use to be constructed in them, and could interrupt and absolutely destroy navigation in them.  *  *  *  So, in this country, each State (subject to limitations to be found in the Federal Constitution), has the absolute control of all the navigable waters within its limits." *Langdon* v. *Mayor, etc.,* 93 N. Y. 129.

In other words, there is a union in the state governments of America of all the powers of King and Parlia-

ment in England over navigable waters and the beds thereof, subject only to the paramount jurisdiction of the United States for the control of navigation.

In the decisions there are references made to the proprietary rights of the English kings, a term which has no place in our system of Government, as all rights of the sovereign under the American system are exercised, and all property rights held, for the benefit of the people. All of the property rights which are held in common by the people of our States are subject to the control of the legislative branch of Government, save certain inalienable rights which the individual citizen does not yield up to the Government, and the power of the sovereign people is complete in the regulation and disposition of those rights.

Chief Justice Beasley, speaking for the New Jersey Court of Errors and Appeals in the case of *Stevens* v. *P. & N. Rd. Co.*, 34 N. J. Law 532, said:

"The principle seems universally conceded that, unless in certain particulars protected by the Federal Constitution, the public rights in navigable rivers can, to any extent, be modified or absolutely destroyed by statute. * * * But the dominion over the *jura publica* appears to be unlimited. By this power they can be regulated, abridged, or vacated. We have seen that, by the common law, the King was the proprietor of the soil under the navigable water, and this being regarded as a private emolument of the Crown, was susceptible of transfer to a subject. But such transfer did not divest or diminish, at least, after *Magna Charta*, the public rights in the water, and consequently the grantees of the Crown held the property in subjection to the common privilege of fishery and navigation. The consequence was that the King could not deprive the subjects of the realm of these general rights. This was a power that resided in Parliament, and not in the monarch."

Mr. Farnham, in his work on Waters and Water Rights (Vol. 1, p. 260), says:

"The King never held any of the non-tidal rivers in trust until he was compelled to convey his waste land in trust for the public, and after that time Parliament and the King held the whole title, which they could dispose of as they saw fit, subject to existing rights of navigation in the stream. The American States succeeded to all the title held by both the King and Parliament, and there is nothing to prevent them from making any grant which they may wish to make."

Now, the State can not delegate its trusteeship by disposing of navigable waters or beds thereof, for one Legislature might resume a power which had been surrendered by its predecessor; but it is quite another thing to say that the Legislature, in the exercise of its control over the beds of streams, can not grant the rights, upon terms or for a price named, to take sand or gravel, call it a sale, or a regulation, as it may please one to term it. The bed of the stream being held by the sovereign for the benefit of the citizens that right may be enjoyed in the way that the legislative branch of Government may determine for the benefit of the public, and it is not inconsistent with a public use to require those who actually take sand and gravel to pay for it so that the benefits may be diffused among all of the people of the State.

This does not imply the right of the State to relinquish its control over the river bed or to permit its use in a way which would interfere with navigation. This idea finds explicit approval, we think, in the opinion of Mr. Justice Field, speaking for the Supreme Court of the United States, in *Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387, where he said:

"The trust devolving upon the State for the public, and which can only be discharged by the management and control of property in which the public has an interest, can not be relinquished by a transfer of the property. The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the

public interest in the lands and waters remaining. It is only by observing the distinction between a grant of such parcels for the improvement of the public interest, or which when occupied do not substantially impair the public interest in the lands and waters remaining, and a grant of the whole property in which the public is interested, that the language of the adjudged cases can be reconciled.''

In the opinion of the court in the case of *Shively* v. *Bowlby*, 152 U. S. 1, Mr. Justice Gray, after a careful review of the authorities with respect to the title of the States in beds of tide waters and navigable streams, and the character of governmental control thereof, said: ''Each State has dealt with the lands under the tide waters within its borders according to its own views of justice and policy, reserving its own control over such lands, or granting rights therein to individuals or corporations whether owners of the adjoining upland or not, as it considered for the best interest of the public.''

This principle is recognized in the many decisions holding to be valid grants by the State of parts of the beds of navigable waters for wharfage purposes, or for reclamation.

In the State of Florida there is a statute prescribing the terms upon which phosphate deposits may be removed by corporations or persons from the beds of navigable streams and fixing prices to be paid to the State for same. That statute has been upheld. *State ex rel.* v. *Phosphate Commission*, 31 Fla. 558.

Now, it can not be claimed that the disposal or sale of sand or gravel, in the bed of the river is a relinquishment of the State's control over the common property, or that it impairs the rights of common enjoyment, or that it interferes with navigation.

We are of the opinion, therefore, that it was within the power of the Legislature to enact this statute.

A few words must be said with respect to the terms of the statute. It will be observed that the first section, which has been quoted, is peculiar in that it refers to

persons as well as corporations in the beginning, but requires only corporations to pay for the taking of sand and gravel. The only burden imposed upon individual citizens is that of first notifying the Attorney General. That, of course, is not an unreasonable requirement. It is only railroad corporations and other corporations which are required to pay for the sand and gravel.

This is not a tax, but a method of utilizing the common property of the State for the benefit of the citizens.

If it be treated as a privilege, that of taking sand and gravel, the corporations of the State have no rights to participate in that privilege which the Legislature is bound to respect, as they are not citizens within the meaning of the Constitution, which provides that "no privileges or immunities shall be granted to any citizen or class of citizens which upon the same terms shall not equally belong to all citizens." Constitution of 1874, § 18, art. 2; *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509.

In very numerous decisions of the Supreme Court of the United States it has been held that corporations are not citizens within the provisions of a similar clause of the Constitution.

They are protected by the due process clause of the Constitution of this State and of the United States, and for that reason illegal exactions can not be imposed.

But, conceding to the citizens, that is to say, to natural persons who are citizens of the State, the right to take sand and gravel as a common right, there is nothing to limit the power of the Legislature to require corporations to pay for sand or gravel taken out of the beds of streams.

The act fixes a minimum price for sand and gravel, which must be paid in any event by the corporation taking the same, and as the act contains no express authority to the Attorney General to fix a greater price than that, it amounts, after all, to the Legislature definitely fixing the price. The act is unobjectionable on that account.

We are of the opinion that the court erred in sustaining the demurrer to the complaint, and the decree is reversed and the cause remanded with directions to over-rule the demurrer.

HART, J., dissents.