UNION SAND & MATERIAL CO. *v.* STATE.

Opinion delivered February 19, 1917.

1. SAND AND GRAVEL—TAKING SAME FROM BED OF NAVIGABLE STREAM.— Permission to appellant, by the War Department of the United States Government to erect a hoisting plant or elevator to be used in lifting sand from the bed of the Mississippi river to cars on the river bank, does not give to appellant any affirmative rights to appropriate sand from the river bed, without complying with the statute of Arkansas.

2. SAND AND GRAVEL—CONTROL OF IN NAVIGABLE STREAMS.—Act of 1913 page 1088 and Act of 1915, page 532, controlling the taking of sand and gravel from the beds of navigable rivers, held to apply to sand and gravel in the beds of navigable streams over which the State has jurisdiction wholly or in part, the Mississippi River being included therein.

Appeal from Desha Circuit Court, *W. B. Sorrells*, Judge; affirmed.

*Caruthers Ewing*, of Memphis, Tenn., for appellant.

1. The Act is unconstitutional and void. Congress is supreme and has acted. Appellant was acting directly under the authority of the Secretary of War, and the State's authority must yield, as the Act was in aid of navigation. 53 Ark. 314; 113 *Id.* 149; 121 Ark. 601; 186 Fed. 426; 140 U. S. 371; 142 *Id.* 161; 227 *Id.* 229; 241 *Id.* 371; 236 *Id.* 439; 222 *Id.* 370, 424; 227 *Id.* 267; 230 *Id.* 352, etc.; 241 *Id.* 371; 176 *Id.* 211; 113 Ark. 149; 188 U. S. 410.

2. The Mississippi river is not wholly within the State of Arkansas, and is a public highway. Arkansas has no power to legislate on the subject. 93 U. S. 4; 3 Wall 724; 159 S. W. 1139; 124 U. S. 465; 94 Ark. 394; 143 Wisc. 18; 125 N. Y. App. Div. 641; 68 N. J. Eq. 500; 109 U. S. 385; 191 *Id.* 17; 99 Va. 747; 54 U. S. 392.

3. The Act imposes burdens on corporations that are not imposed upon natural persons. 118 U. S. 394; 216 *Id.* 400, etc.

4. The corporation is coerced to give evidence against itself. 3 Wigmore on Ev., § 2263, 2257; 81 Fed. 830; 116 U. S. 616; 66 N. Y. S. 542; 29 L. R. A.

(N. S.) 827; 1 Sawy. 605; 142 U. S. 547; 68 N. E. 353; 15 L. R. A. 676; 20 Atl. 1037; 91 N. E. 1048; 62 So. 397.

5.  Federal control is necessarily exclusive. 182 S. W. 555; 240 U. S. 227; 166 *Id.* 269; 96 *Id.* 379; 59 U. S. 421; 95 *Id.* 459; 32 Fed. 9; 39 *Id.* 77; 41 *Id.* 867; 57 *Id.* 803; 202 *Id.* 776; 204 *Id.* 489; 17 L. R. A. 223; 1 McCrary, 400; 46 How. Pr. 24; 241 U. S. 351.

*John D. Arbuckle*, Attorney General, and *R. W. Wilson*, special counsel, for appellee.

1.  The same defense is made here as in 122 Ark. 151.  The State owns the bed and bars to the thread of the stream.  152 U. S. 1; 53 Ark. 320; 178 S. W. 378; 113 Ark. 150.  The title is in trust for the people. 152 U. S. 1.  Appellant is a trespasser.  223 U. S. 60.  The State alone has the right to collect for sand and gravel taken from west of the center of the current of the river.  121 Ark. 601.

2.  The shifting of sand and gravel gives appellant no title.  140 Pac. 637-652.

3.  No rights are acquired by trespass, long permitted.  56 Conn. 508; 16 Atl. 548; 3 Cruise, 467; 146 U. S. 387.

4.  The permit of the Secretary of War gave the defendant no rights; it merely permitted it to erect a hoisting plant on land in Tennessee.  18 Hall 65, 66; 140 Pac. 638.

5.  There is no conflict in Federal and State rights here.  29 Cyc. 364 (E); 103 Am. St. 77.  The War Department was without power to authorize defendant to remove sand and gravel in aid of navigation from Arkansas soil.

6.  Appellant was not denied the equal protection of the laws.  113 Ark. 150, 160; 229 U. S. 53.

7.  This is not a tax, but a privilege.  The Act is unobjectionable.  113 Ark. 150; 125 U. S. 181; 204 *Id.* 359; 140 Pac. 651.

8.  The corporation was not coerced to give evidence against itself.  221 U. S. 361; 158 S. W. 599; 102 Ark. 166; 91 *Id.* 13.  The Act is valid.

McCULLOCH, C. J.   Appellant is a foreign corporation engaged in the business of taking sand and gravel from the bed of the Mississippi river for commercial purposes, that is to say, for sale to users of those materials, and this is an action instituted by the State against said corporation to recover the price of sand and gravel taken from the bed of that river between the center of the main channel and the Arkansas shore line.   The State relies, for recovery, upon the statutes enacted by the General Assembly of the year 1913 and of the year 1915, declaring the ownership of sand and gravel, and certain other material and mineral, in the bed of the navigable rivers to be in the State, and fixing the terms and prices upon which the same can be removed.   Acts 1913, p. 1088; Acts 1915, p. 532.

The Act of 1913 provided that it should be unlawful "for any railroad company, corporation or company, or person, of any kind whatever, to take sand or gravel from any sand or gravel bar of any navigable stream in this State without first notifying the Attorney General of the same and then by his consent the said railroad company, corporation or company, may take from said navigable stream sand or gravel by paying into the State treasury the sum of not less than four cents per cubic yard for sand and not less than five cents per cubic yard for gravel."

Section 1 of the Act of 1915 reads as follows: "That hereafter it shall be unlawful for any person, firm, company, corporation or association of persons to take sand or gravel, oil or coal from the beds or bars of navigable rivers and lakes of this State without first procuring the consent of the Attorney General of the State so to do.   Such consent may be withheld unless such person, firm, company or corporation shall agree in writing to keep an accurate record and account of all sand and gravel, oil and coal, taken by him or them, from said rivers and lakes, and render to the said Attorney General at the end of each month an itemized, verified statement of the number of cubic yards of sand and gravel, and gallons of oil and tons of coal

taken out each day during the month.    At the time of making such statement, the person, firm, company or corporation shall pay into the State treasury five cents for each cubic yard of sand and gravel so taken, and one-half ($\frac{1}{2}$) a cent for each gallon of oil, and six cents per ton for coal taken, and if any other valuable minerals be found in such rivers, any firm, corporation, or persons taking the same out shall make a contract with the Attorney General, stating the per cent. due the State."

The State sues under the Act of 1913 for a certain quantity of sand and gravel taken by appellant subsequent to the passage of that statute and prior to the statute enacted in 1915, and also sues under the Act of 1915 for certain quantities of said materials taken by appellant subsequent to the passage of that statute. The case was tried upon an agreed statement of facts showing the precise amount of materials taken by appellant and there is no dispute about the amount. The court rendered judgment in favor of the State for the recovery o fthe aggregate price of the sand and material taken as fixed by the respective statutes in accordance with the amounts stipulated in the agreed statement of facts.    It is unnecessary to consider further the attack made upon the constitutionality of the statute, because the question has been entirely set at rest by a former decision of this court which has been subsequently adhered to.    *State ex rel. v. Southern Sand & Material Co.,* 113 Ark. 149; *Southern Sand & Material Co.* v. *State,* 121 Ark. 1; *C. M. Johnson Sand & Gravel Co.* v. *Quarles,* 121 Ark. 601.

In the first case cited above we held (quoting from the syllabus):

"The State having dominion over the sand and gravel in the river beds of navigable streams may require corporations taking sand and gravel therefrom to pay the State therefor.    *  *  *  *    A statute requiring payment to the State for sand and gravel taken from the beds of navigable streams does not levy a tax, but

provides a method of utilizing the common property of the State for the benefit of the citizens."

It was further held in that case that the sovereignty of the State over the subject-matter named is not in conflict with the authority of Congress over navigable streams for the purposes of protecting navigation, and that the two powers are exercised in entire harmony, the authority of Congress, of course, being paramount in any conflict which might arise.

(1)    It is insisted in the present case that appellant was acting directly under the authority of the War Department and that therefore the State's authority must yield.    In other words, it is contended that appellant had secured authority to take sand and gravel in order to dredge the bed of the river in aid of navigation.    The facts do not, however, bear out appellant in the defense attempted to be set forth.    The record shows that appellant applied to the War Department through the engineer of the Memphis district for permission to erect an elevator or hoisting plant to load sand and gravel from barges upon railroad cars standing on the river bank.    The assurance was given in the application that there would no no interference with navigation and that the plant would be erected so as to meet the approval of the engineer.    The engineer made a favorable recommendation to the department on the ground that the plant would not interfere with navigation, and that recommendation was approved by the Secretary of War.    It appears, therefore, that there was no authority at all granted by the Government to appellant to dredge the bed of the Mississippi river, but permission was merely granted to erect a plant in connection with the operation of taking sand and gravel on the theory that it would not interfere with navigation.    The approval of the War Department merely manifested the consent of the Government and showed knowledge on the part of the United States officials concerning appellant's operations, as recited in the agreed statement of facts.    It is the policy of the Government to require permission of the

War Department before anything can be erected in the way of a bridge or other obstruction over or about navigable streams which might interfere with navigation, and the permission was granted in this instance pursuant to that policy. The order of the War Department operated merely as a permit and granted to the appellant no affirmative rights. *State ex rel.* v. *Akers,* 92 Kans. 169, 140 Pac. 638. The unquestioned power of the Federal Government to provide for dredging the beds of navigable streams in order to protect or to aid navigation is not involved in this case.

(2)  It is next contended that sand and gravel in the bed of the Mississippi river does not come within the terms of our statute for the reason that the Mississippi river is not wholly within the State.  Appellant relies upon the peculiar language of the two statutes, the Act of 1913 referring to "sand or gravel from any sand or gravel bar of any navigable stream in this State," and the Act of 1915 refers to "sand or gravel, oil and coal, from the beds or bars of navigable rivers and lakes of this State." The argument is that because the Mississippi river is not a navigable stream "in" this State, or "of" this State, the material lying in the bed of the stream is not covered by either of the statutes referred to.  This is a very narrow view to take of the statute and one which it is perfectly obvious the lawmakers did not intend.  The preamble of each of the statutes declares that the sand and gravel bars in the beds of the navigable streams of Arkansas belong to the State, and there is no reason to suppose that the lawmakers intended to place any less value on that part of the bed of the Mississippi river which lies in the State, or to exclude it from the exercise of the State's power with respect to that ownership.  The purpose of each of the statutes was to assert the sovereign power of the State with respect to the ownership of beds of navigable streams within its jurisdiction and this, of course, included the bed of the Mississippi river between the Arkansas shore line and the center of the channel.  While the river itself is not in the

State and the stream is not, literally speaking, one of the navigable rivers of the State, it is, broadly speaking, a part of the navigable waters available to the State and in that sense may be considered a navigable river of the State, and the bed of one-half of the stream is within the boundaries of the State. We think it would defeat the obvious intention of the lawmakers to put the construction upon this statute insisted upon by learned counsel for appellant. It is a fair interpretation of the language of the two statutes to say that they were intended to apply to the materials in the beds of navigable streams over which the State has jurisdiction wholly or in part.

The only other contention necessary to consider is that to the effect that the Act is void because it is an attempt to coerce a corporation into giving evidence against itself, but it is sufficient to say in answer to that contention that there is no coercion at all, as the statute merely prescribes conditions upon which corporations may be permitted to take such materials out of the beds of the rivers. All of the attacks upon the validity of the statute are unfounded and it follows that the judgment, upon the undisputed evidence with reference to the facts of the case, was correct, and the same should be affirmed and it is so ordered.