MORLEY, COMMISSIONER OF REVENUES *v.* BERG.

4-9102                                     226 S. W. 2d 559

Opinion delivered February 6, 1950.

*O. T. Ward,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

DUNAWAY, J. Under the provisions of Ark. Stats. (1947) 10-1001, sand and gravel (and other minerals not here involved) may be taken from the beds or bars of navigable rivers in the state upon procuring the consent of the Commissioner of Revenues, who shall issue licenses or permits for such removal under certain conditions prescribed in the statutes, with the advice and approval of the Attorney General. The licensee is required to pay a royalty to the state for sand and gravel removed commercially, and in addition a severance tax is levied. The right of the Commissioner to bring an action for collection of royalties due the state under this statute, and his right to seek an injunction against persons alleged to be unlawfully removing sand and gravel are presented for our determination on this appeal.

The precise issues for decision can best be seen by a somewhat detailed chronological statement of the facts leading up to the present action instituted by appellant, Morley. On April 24, 1947, Otho Cook, Commissioner of Revenues, acting under authority of the above statute, granted to one J. W. Sanders the exclusive right to remove sand and gravel from certain sections of land in Ouachita and Calhoun counties traversed by the Ouachita River. This permit was to continue for as long a time as sand and gravel were commercially produced, production to begin within one year, and was to terminate six months after commercial production ceased. In October, 1947, Berg, appellee herein, was enjoined from taking gravel from the lands included in the Sanders permit and judgment was rendered against him for gravel already removed, in an action brought against him in the Ouachita Chancery Court by Sanders, in which Cook, Commissioner, intervened without objection.

On September 24, 1948, Cook, Commissioner, granted an exclusive permit to remove sand and gravel to A. Roy Allen and C. C. Allen covering part of the

lands originally included in the Sanders permit. Notice of cancellation of permit as to these lands was sent to Sanders on September 29, 1948, by Cook. Subsequently, Sanders instituted an action against the Allens asking judgment for gravel removed by them and seeking an injunction against their further operations on the lands included in their permit, it being Sanders' contention that his original exclusive permit covering said lands had not been legally cancelled. On January 12, 1949, Morley, who had succeeded Cook as Commissioner of Revenues, intervened, praying that the Sanders permit be declared valid and subsisting and that the Allens be enjoined. On motion of the defendants Allen, Morley's intervention was dismissed on the ground that the state had no interest in the suit, and that if it did, action on behalf of the state must be taken by the Attorney General rather than the Commissioner. The Attorney General then asked that the State of Arkansas be made a party and that the Commissioner's intervention be reinstated as that of the State. The court refused to reinstate the intervention, but continued the case indefinitely to allow time for the State to plead. Within a few weeks the cause was dismissed without prejudice on motion of the plaintiff, Sanders. In view of this action, Morley did not appeal from the dismissal of his intervention.

On March 24, 1949, the Commissioner sent to the Allens a notice of cancellation of their permit, setting forth therein that said permit had been issued without authority because of the outstanding valid permit covering the same acreage previously issued to Sanders. The next step in the controversy was the filing of the instant action by Morley against Berg and the Allens, who were alleged to be employees of Berg. The complaint alleged the unlawful taking by Berg of sand and gravel from the lands in dispute, and sought judgment for the amount of royalty and severance tax due the state on this account; it was further alleged that the Allens were claiming the right to remove sand and gravel under a void permit; and concluded with a prayer for a temporary restraining order, and on final

hearing a permanent injunction, against all the defendants, enjoining them from further removal of sand and gravel from the lands here involved.

Defendants' motion to dismiss this complaint was based on two contentions: (1) The issues here involved are the same as in the earlier case of *Sanders* v. *Allen* discussed above, and the ruling of the court dismissing Morley's intervention therein is *res adjudicata* as to the Commissioner's right to maintain the present action against the defendants. (2) The Commissioner of Revenues is without authority to maintain such an action; it must, under the Constitution, statutes and common law be brought in the name of the State of Arkansas by the Attorney General. The Chancellor sustained the motion on both grounds and dismissed .the complaint. Hence this appeal by the Commissioner.

On the issue of *res adjudicata,* we think the contention of the defendants is without merit for two reasons. First, there is no showing that the issues in the two actions are the same. Indeed Berg, one of the defendants in the instant case, who is alleged to be unlawfully removing gravel, was not even a party to the earlier suit. The first suit was one between private parties as to their rights, in which it is true the Commissioner sought to intervene; but in the present suit the action is on behalf of the state to collect royalties, severance taxes and penalties alleged to be due it, and to protect the state's interest in its property, which is allegedly being unlawfully taken. In addition, the earlier suit was dismissed without prejudice shortly after the court's ruling dismissing the Commissioner's intervention; the question of his right to intervene in a non-existent lawsuit became moot.

Whether the Commissioner of Revenues may maintain the present action, or whether it must be brought by the Attorney General is the other question for decision. Appellees argue that under the Constitution, statutes and common law, only the Attorney General can proceed for the relief here sought. Art. VI, § 22, of the Constitution provides that the ''Attorney General shall perform such

duties as may be prescribed by law, . . ." The authority of the Attorney General to bring various legal actions was discussed fully by this court in *State, ex rel. Atty. Gen.* v. *Karston,* 208 Ark. 703, 187 S. W. 2d 327, where we said at page 707: (after quoting Art. VI, § 22, of the Constitution)

"The Constitution thus gave the Legislature the right to state the powers and duties of the Attorney General; and § 5582 of Pope's Digest (§ 6 of Act 131 of 1911) says:

" 'Nothing in this act shall relieve the Attorney General of discharging any and all duties now required of him under the common law, or by any of the statutes of this state, . . .'

"From this section it is clear that the Legislature has placed on the Attorney General certain statutory duties, and also 'all duties now required of him under the common law.' "

And quoting further from the opinion at page 708, we said: ". . . it is generally held that in the exercise of his common-law powers, an Attorney General may not only control and manage all litigation in behalf of the state, but he may also intervene in all suits or proceedings which are of concern to the general public."

Clearly then the Attorney General could bring an action such as the one here in question, if authority to do so were granted by statute, or under his common-law powers unless such authority was specifically taken from him by the Legislature. On the other hand the same authority to bring suit could be vested in the Commissioner of Revenues if the Legislature so desired. There is no constitutional inhibition against this as argued by appellees. The question then is simply whether the Legislature has in fact given the Commissioner this authority.

A brief discussion of the early Legislative Acts governing the taking of sand and gravel from the beds and bars of navigable rivers will be helpful in a determination of this question. Prior to 1913, the riparian owners

were allowed to take sand and gravel without any permit or license. By Act 265 of the Acts of 1913, such taking could only be made upon obtaining the consent of the Attorney General. Removal of sand and gravel without this consent was made a misdemeanor. The next Legislature changed the royalty rates and in addition to the criminal penalties already provided for unlawful taking, added a provision that the Attorney General might bring suit to recover the price of sand and gravel removed without payment of the required royalty. Constitutionality of these statutes was upheld in *State, ex rel. Moose* v. *Southern Sand & Material Co.*, 113 Ark. 149, 167 S. W. 854; *Johnson Sand & Gravel Co.* v. *Quarles*, 121 Ark. 601, 182 S. W. 283.

Control over these sand and gravel leases remained in the hands of the Attorney General until the creation of the Department of Revenues in 1925. By Act 88 of the Acts of 1925, § 14 (Ark. Stats., 1947, § 84-1705) it was provided: "The duties imposed upon the Attorney General of the State of Arkansas under § 6789 of Crawford & Moses' Digest (§10-1001, Ark. Stat., 1947) of granting permits and leases for the removal of sand, gravel, oil and coal from the beds and bars of navigable rivers and lakes of the State of Arkansas, the collection of the revenue derived therefrom be and the same are hereby transferred to the Department of Revenues immediately after the appointment of the Commissioner of said Department, and all books and records of the same now in the office of the Attorney General shall be transferred and removed to said Department of Revenues."

Since this enactment the Legislature has from time to time added to the list of minerals subject to lease and made changes in royalty rates, but the powers of the Commissioner in granting permits have remained the same as when this authority was vested in the Attorney General. This statute together with § 1 of Act 131 of the Acts of 1935 (Ark. Stats., 1947, § 84-1719) hereinafter quoted, covers the legislative grants of authority to the Commissioner here under consideration: "The Revenue Commissioner of the State of Arkansas is here-

by given authority to promulgate any and all regulations, rules and orders which he may deem necessary to effectively collect all taxes, penalties, delinquencies, defaults and other monies required by law to be collected by the State Revenue Department, and suits may be filed in the name of the Commissioner of Revenues and at his instance to recover money due and payable to the State and collectible by him. Within ten (10) days after any amount of money is due and payable the Revenue Commissioner shall take steps to collect the same.''

We think the Legislature clearly intended to give the Commissioner the same authority in dealing with the State's property as involved in the case at bar that was previously given the Attorney General. That the Commissioner may sue in his name to recover not only taxes but ''other monies'' required by law to be collected by him is plainly stated in Ark. Stats., § 84-1719. This would certainly include money due on royalties. Since the Legislature has charged the Commissioner with the responsibility of determining who shall take the minerals from lands in the navigable streams of Arkansas, subject to the approval of the Attorney General; and has authorized suit in his name to collect monies due therefrom, we think his authority to ask an injunction to prevent continued illegal taking of State property in such a suit is merely a necessary incident to the effective carrying out of duties specifically given him.

We do not hold that the Attorney General might not maintain on behalf of the State a similar suit in circumstances he deemed appropriate; nor do we pass on the merits of the allegations in the complaint. We do hold that the Commissioner had authority to maintain the action here brought, and that the Chancellor erred in dismissing the complaint.

The decree appealed from is reversed and the cause remanded with directions that the complaint be reinstated for a trial on the merits of the cause.