MORLEY, COMMISSIONER OF REVENUES *v.* BERG.

4-9325                                         235 S. W. 2d 873

Opinion delivered January 15, 1951.

Rehearing denied February 12, 1951.

*O. T. Ward, Lawrence B. Burrow* and *J. Bruce Streett,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

GEORGE ROSE SMITH, J.  This is an action by D. R. Morley, Commissioner of Revenues, to enjoin the appellees, H. M. Berg, A. R. Allen, C. C. Allen, and Paul Smith, from taking sand and gravel from the bed and bars of that part of the Ouachita River that lies within a certain eighty-acre tract.  On the first appeal we sustained the Commissioner's authority to bring the suit.  216 Ark. 562, 226 S. W. 2d 559.  The question now presented is whether the right to remove these minerals is vested in the Allens or in J. W. Sanders.  The answer depends upon whether a former Commissioner of Revenues, O. A. Cook, was authorized to withdraw this eighty-acre tract from a lease previously granted to Sanders and then lease it to the Allens.

The Commissioner has the power to execute leases for the taking of sand and gravel from the beds and bars of navigable rivers.  Ark. Stats. 1947, § 10-1001.  Under successive leases granted from time to time Sanders has been operating in the vicinity north of Camden since 1926.  His most recent lease, executed in 1944 and amended in 1947, gave him the exclusive right to remove sand and gravel from the Ouachita in nine specified sections of land.  In 1948 Commissioner Cook notified Sanders that an investigation had disclosed that Sanders had not developed the tract now in controversy and that in view of the great amount of other acreage included in Sanders' lease the retention of this tract was not necessary to protect Sanders in his development.  Cook accordingly undertook to withdraw this tract from Sanders and lease it to the Allens.

When Morley became Commissioner he concluded that his predecessor had been without power to cancel any part of Sanders' lease as long as minerals were being

produced in commercial quantities. Morley therefore notified the Allens that their lease was void and that the Sanders lease was reaffirmed. The appellees, however, continued their operations, and Morley brought this suit for an injunction. The chancellor dismissed the complaint upon the theory that Cook acted within his authority in partly canceling the Sanders lease.

The statute provides that the area to be leased to any one person shall not exceed a total acreage necessary to protect the development, such total to be determined by the Commissioner in each instance. The appellant contends that since this determination was made when Sanders received his lease in 1944, the question could not be re-examined at a later date as long as the lessee continued commercial production from any part of the leasehold. It is conceded that the State is here acting in its proprietary capacity, and the appellant insists that it is therefore bound by its contracts just as a private person would be.

In the main we agree with these contentions, though not with the conclusion reached by the appellant. In making an original lease the Commissioner is certainly under a duty to exercise reasonable judgment in fixing the lessee's total area, neither granting so little as not to make the lessee's investment for equipment worthwhile nor granting so much as to be clearly beyond the lessee's capacity to develop the leasehold within a reasonable time. Further, after the original area has been fixed the Commissioner cannot arbitrarily abrogate the State's contract by canceling the lease in whole or in part as long as the lessee performs his duties.

But it does not follow that later events may not warrant a reconsideration of the area to be held exclusively by the lessee. Even in the case of private persons it is well settled that the lessor of a mining lease is entitled to assert a forfeiture if the lessee fails to develop the leasehold with a view to the best interests of both parties. We have often pointed out that since the principal consideration to the lessor is his expectation of receiving royalties, there is an implied obligation on the part of the

lessee to develop the entire property so that the lessor may obtain the expected income that induced him to grant the lease. *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 167, 133 S. W. 837; *Millar* v. *Mauney,* 150 Ark. 161, 234 S. W. 498. Of course, the rapidity with which the lessee should proceed with his development depends upon the particular circumstances of each case, but in the absence of an agreement to the contrary the implied duty of complete development is inherent in all mining leases that provide a royalty to the lessor. Here the only consideration to be paid to the State is the royalty upon the sand and gravel.

In the light of these principles we think Cook was warranted in withdrawing this eighty-acre tract from Sanders. The lease included the bed and bars of the Ouachita in nine sections of land. As to five sections south of Camden, however, it is shown that a former Commissioner induced Sanders to include them in his 1944 lease merely to enable Sanders to prevent trespassers from wrongfully removing sand and gravel. As it does not appear that the State expected Sanders to develop these five sections we do not take them into account in determining the extent to which Sanders has complied with his implied duty.

Sanders described his method of operating since about 1943. He drags a large bucket across the bed of the river to take out the sand and gravel. In times of high water the current brings down additional deposits from a half mile of shoal that is just above Sanders' point of activity. Over a period of seven years Sanders has moved up and down along a quarter-mile segment of the river in Section 11, the natural replacements having been more than sufficient to supply his needs. Indeed, he admits that he has plenty of sand and gravel in Section 11 and could have excavated more had there been a market for it.

The tract assigned to the Allens lies in Section 10, about a mile upstream from Sanders and past the large shoal that has heretofore replaced his withdrawals. There is no proof to indicate that the Allens' taking of sand

and gravel has affected the supply available to Sanders at his established location. It was shown that considerably larger concerns operating on the Arkansas River have been granted territories larger than that held by Sanders north of Camden, but the proof also shows that these operators move up and down their entire segments of the river several times a year in order to find the minerals they need.

On the record made in this case, to which Sanders is not a party, we cannot say that Cook acted arbitrarily in deciding that Sanders was not properly developing the tract now leased to the Allens. Sanders testified at the trial, but he did not undertake to say when, if ever, his development would have extended to the disputed tract. He admitted that he has ample deposits at his present site and that there are additional deposits in other sections north of Camden that are still in his exclusive territory. His only real complaint is that the Allens have sold sand and gravel to purchasers who would have bought from him had he been the only dealer in the vicinity.

Section 10-1001 limits each lessee to an area necessary to protect development, and the appellant strongly argues that the intent of this language is to impose on the State an obligation to protect the investment of its lessee by shielding him from competition. On the particular facts of the case at bar this argument is not persuasive. Sanders appears to have made his investment at least as early as 1943, when the five sections south of Camden had not yet been included in his lease. Hence he made his outlay at a time when he was vulnerable to competition from any one who might obtain a lease upon the southern sections, and it is not shown that competition from that area would have been any less injurious to his investment than the activities of the Allens have proved to be.

But, apart from these circumstances, we do not agree that the language in question was intended to guard the lessee against competition. The statute does not say that each lessee is to be guaranteed a *minimum* area large

enough to protect development under monopolistic conditions; it says that the lessee's total acreage shall not *exceed* that necessary to protect development. We hardly think the legislature meant to disregard the spirit of Article 2, § 19, of our constitution, which prohibits monopolies in any form. It is more reasonable to believe that by the language in question the legislature sought merely to assure each lessee of sufficient territory to justify the requisite investment to develop the acreage under conditions of fair competition. Certainly the lessee of a lease between private persons could not justify the retention of undeveloped acreage merely to enable him to fend off competition in the market. We are not convinced that the General Assembly framed this statute for the purpose of putting the State in a worse position than that occupied by private lessors.

Affirmed.

GRIFFIN SMITH, C. J. (Dissenting). Effect of the opinion is to say that one Commissioner has the power and did not abuse his discretion in canceling a lease, but that the succeeding Commissioner, who found that the cancellation was without notice, could not restore to the former lessee the acreage assigned by a third Commissioner, who admittedly intended that the property should be protected against unlawful mining. I do not agree that in the circumstances of this case there was an implied condition that the lease would be worked. The question of protecting Sanders against competition is a remote incident, mentioned collaterally in the testimony, and determination of the appeal should not turn on an immaterial issue; nor should the transaction be likened to an oil and gas lease where offset wells drain the stratum. Oil and gas leases are controlled by a different statute and by decisions peculiar to the fugitive nature of the mineral.

It is my view that the State has the right, through its Commissioner to whom supervision has been delegated, to *conserve* as well as lease, and that the state is not under an obligation in all cases to authorize the tak-

ing of sand and gravel. I would therefore uphold the action of Commissioner Morley.