THOMPSON, COMMISSIONER OF REVENUES, *v.* CLARK.

5-77                                           257 S. W. 2d 42

Opinion delivered April 20, 1953.

*O. T. Ward,* for appellant.

*Joe W. McCoy* and *William C. Gilliam,* for appellee.

GRIFFIN SMITH, Chief Justice. The matter for determination is whether the trial court was justified in instructing the jury to return a verdict for the defendant.

The commissioner of revenues alleged non-payment of two checks issued by Sam R. Clark for obligations incurred under a sand and gravel permit issued September 1, 1950, responsive to an application of August 29, 1950. The checks are dated September 25, 1951—nearly thirteen months after the permit (referred to by appellee as a contract) was executed. One check is for $1,327.35, the other for $200.60. The larger remittance is endorsed: "State royalty on material removed by the Arkansas Aggregate Company from Ouachita river lease owned by Sam R. Clark, and as per [the Revenue Department's] audit Sept. 10, 1951." The smaller check bore a like endorsement except that it applied in payment of severance tax.

The permit was issued under authority of Act 321 of 1937. For background information see Acts 138 of 1915, 296 of 1917, 212 of 1929, and 149 of 1935.

Sam R. Clark is general manager for Malvern Sand and Gravel Company. Bill Borhem and Wayne Clark are referred to as residents of Memphis and operated in this state as Arkansas Aggregate Company.[1] Sam R. Clark (not to be confused with Wayne Clark, mentioned in connection with Arkansas Aggregate) testified that Borhem's company took the gravel for which payment was intended when the two checks were issued; that the department of revenues caused an audit to be made and that George Adams, in charge of the royalty and severance tax division "convinced him" that the payments

---

[1] Records in the office of the Secretary of State show the incorporation of Arkansas Aggregate Company, with William Borhem as an officer. His address is given as Malvern.

were due. He had told Borhem not to touch the river gravel. Wayne Clark received similar directions. Appellee testified that his attorney was not available when the demand for payment was made, but that he stopped payment on the checks upon advice of counsel. The checks were held by the payee for approximately six weeks. During this period the commissioner of revenues wrote appellee that a hearing would be held in the commissioner's office November 9th, 1951, to determine whether it was feasible to issue a permit to *Clark Equipment Company*. Appellant's brief, p. 37, parenthetically refers to Arkansas Aggregate Company as the Clark Equipment Company, but appellee mentions "the two companies"— Arkansas Aggregate and Clark Equipment. Appellee also says that the checks represent amounts due "on sand and gravel so removed *by these two stranger companies*." Sam R. Clark testified that "The Arkansas Aggregate Company, or Bill Borhem's company, removed the gravel."

While the checks were being held—and, as Commissioner Dean R. Morley testified, for the purpose of determining where the equities were, and with the reservation that if territory should be taken from appellee payment would not be urged—the Clark Equipment Company is said to have become bankrupt. Morley very frankly testified that Arkansas Aggregate's attempts to obtain space on the river "down there" involved considerations of a conflicting nature — "evidence both ways," as he expressed it. After personally inspecting the premises he was still undecided, and the hearing was not held. On November 7th, 1951, the commissioner wrote Sam R. Clark and Malvern Sand and Gravel Company that the Clark Equipment Company had informed the state that its representative would not be present for the scheduled hearing on the 9th, "due to the fact that they have ceased their operations on the Ouachita River."

Following receipt of this information the checks were deposited, and were returned with the notation that payment had been stopped.

We think the court erred in directing a verdict. The checks, admittedly based upon an audit, were evidence, *prima facie,* that appellee had acknowledged the debt. The applicable statute prohibits, in general, the taking of sand or gravel, but permits the commissioner of revenues, with the attorney general's consent, to define the limits of the area of the beds and bars of rivers, lakes, etc., "from which any one person, firm, or company, corporation, or association, shall be permitted to *exclusively* take . . . sand and gravel."

The defendant, as a witness, was an interested party, hence his testimony cannot be regarded as uncontradicted. But the broader ground upon which our opinion rests is that under the statute there is an implied covenant upon the part of the lessee to exercise reasonable care to protect the lease against trespassers. Morley testified that his department knew that mining operations were being engaged in by Arkansas Aggregate, but he did not admit knowledge that such operations were objectionable to appellee.

In *Morley, Commissioner,* v. *Berg,* 218 Ark. 195, 235 S. W. 2d 873, it was said that the commissioner, in granting a lease, was under a duty to exercise reasonable judgment in fixing the total area, "neither granting so little as not to make the lessee's investment for equipment worthwhile, nor granting so much as to be clearly beyond the lessee's capacity to develop the leasehold within a reasonable time." It was then stated that after the original area had been defined the commissioner could not arbitrarily abrogate the state's contract by cancelling the lease in whole or in part as long as the lessee performs his duty. "But," says the opinion, "it does not follow that later events may not warrant a reconsideration of the area to be held exclusively by the lessee. . . . We have pointed out that since the principal consideration to the lessor is the expectation of receiving royalties, there is an implied obligation on the part of the lessee to develop the entire property so that the lessor may obtain the expected income that induced him to grant the lease."

In the case here the commissioner, in asking that a hearing be had, no doubt observed the general rule an-

nounced in the opinion to which reference has been made, hence the mere suggestion that the subject-matter be reviewed was not a threat of illegal cancellation. We also think that by analogy the rule requiring a lessee to develop an area assigned to him in order to provide the lessor with royalties reasonably to be expected, requires the lessee to exercise proper care to prevent depletion by trespassers. Here the appellee was in possession of all rights affording him legal relief against unwarranted invasion, such as he now complains of. Seemingly he felt that a mere expression of disapproval would be sufficient. That it was not effective, subsequent developments demonstrated—with the result that state property worth $1,527.95 has been taken.

The judgment is reversed and the cause is remanded with directions that a new trial be had.