Mahlon A. Martin, Director Department of Finance and Administration P. O. Box 3278 Little Rock, AR 72203
Dear Mr. Martin:
This Office acknowledges receipt of your request for an official opinion concerning certain sand and gravel permits which have been issued prior to the adoption of Act 524 of 1975. You advise that the Natural Resources Office has received an application for the issuance of a sand and gravel permit which would fall within the geographical reach of sand and gravel permits held by Jeffrey Sand Company. In connection with the processing of this application you relate that the following three questions arise.
First, may the Department of Finance and Administration offer a sand and gravel permit through the competitive bidding process for sand and gravel rights on stretches of the Arkansas River included in the Jeffrey Sand Company permit?
Second, in the absence of specific language relating to the duration of the permit held by Jeffrey Sand Company, when does the permit expire?
Third, may the Director of the Department of Finance and Administration require Jeffrey Sand Company to pay royalties greater than those specified in the 1969 permit?
We will address your questions in the order in which they were raised. First, Jeffrey Sand holds its permit as the assignee of Criss and Shaver, Incorporated. The sand and gravel permit was issued by the Commissioner of Revenue pursuant to Ark. Stat. Ann. 10-1001 through 10-1007, which was superseded by Act 524 of 1975. Section 10-1001 provided in pertinent part:
 The Commissioner of Revenues shall, if he deem it necessary for the proper commercial development of such mineral resources, with the advice and approval of the Attorney General, define the limits of the areas of the beds or bars of such rivers . . . from which any one person, firm, company, corporation, or association shall be permitted to exclusively take oil or gas or casinghead gas, sand and gravel, coal or other minerals, provided, however, that the total area from which any one person, firm, company, corporation or association shall be permitted to exclusively take . . . sand and gravel . . . shall not exceed a total acreage necessary to protect lessors development, such total acreage to be determined by the Commissioner of Revenues in each instance.
Consistent with this statute, the permit to remove sand and gravel granted Jeffrey's predecessor in interest an exclusive right to remove sand and gravel within a specifically described portion of the Arkansas River. While this permit remains in effect, no permits may be issued which would fall within that area reserved to Jeffrey Sand Company.
The Jeffrey permit contains the following language as regards termination:
 This agreement shall terminate if commercial production is not begun within one year from the day on which a permit is issued. It shall also terminate within six months after commercial production has ceased.
The lease held by Jeffrey Sand is not for a specific term. The question of whether the Commissioner of Revenues can cancel a portion of a sand and gravel lease arose in the case of Morley, Commissioner of Revenues, v. Berg, 218 Ark. 195, 235 S.W. 873
(1951). In this case, in which the court upheld the withdrawal of an 80-acre tract from a permit holder by the Commissioner of Revenues, Justice George Rose Smith stated:
 . . . After the original area has been fixed the Commissioner cannot arbitrarily abrogate the State's contract by canceling the lease in whole or in part as long as the lessee performs his duty.
But it does not follow that later events may not warrant a reconsideration of an area to be held exclusively by the lessee.
The Court mentions the implied obligation of the lessee developing the entire property held by the lease so that the lessor may obtain the expected income that induced him to grant the lease. If the Department of Finance and Administration determines that the leaseholder has not developed all of the lease it may modify the geographical size of the lease. See also Thompson v. Clark,221 Ark. 955, 257 S.W.2d 42 (1953).
The State holds its title to the beds of navigable streams and rivers as trustee for all its citizens. State v. Southern Sand and Material Co., 113 Ark. 149, 167 S.W. 854 (1914). Article 2,19 of the Arkansas Constitution prohibits monopolies in any form. If the Director of the Department of Finance and Administration determines that existing State sand and gravel permits create monopolistic conditions, he may cancel leases or portions of leases to foster competitive practices.
The statute under which the Jeffrey Sand and Gravel permit was issued specified that royalties paid to the Commissioner of Revenue be 2.5% for each cubic yard of sand and 5.0% for each cubic yard of gravel taken. The permit issued specifies the rates set out in the statutes. In Act 524 of 1975 the legislature modified the procedures by which sand re the officer in the public hearing. The power given to the Commission to appoint a hearing officer though it is discretionary since the word "may" was used by the legislature in giving the Commission that power of appointment. Hicks v. Arkansas State Medical Board, 537 S.W.2d 794,260 Ark. 31 (1976). So, the Commission could restrict the appointment of the Hearing Officer to a particular term certain and by doing so limit the extent of the hearing officer's authority to act.
Your second question is whether it is permitted by law for the chairman of the Commission to make a motion, second a motion or vote on a motion? There is no statute in Arkansas restricting the actions of the chairman in areas of voting on an issue before a Commission.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Paul L. Cherry.