## ZELLNER v. SAMUELSON et al. (No. 2211.)

(Court of Civil Appeals of Texas. Texarkana. March 11, 1920. Rehearing Denied April 22, 1920.)

1. **Partition 77(3)—Gift of portion of land not binding on nonconsenting owner.**

Where husband gave his second wife a portion of land belonging to the community estate of first marriage in which son by first wife had an undivided interest, and where such portion of the land on second wife's death was incapable of actual partition, a $2/36$ interest therein owned by son's heirs will not be satisfied out of the other portion of the land to prevent a sale and enable second wife's heir, owner of $34/36$ interest, to retain the land, where husband's estate consisting of $66/72$ interest in such land was indebted in sums exceeding value of such interest, since to satisfy the $2/36$ in-

terest out of such land would be injurious either to owners of such interest or to husband's heirs.

2. **Husband and wife 264 — Land conveyed to wife may become her separate property, though paid for with community funds.**

The mere fact that land conveyed to wife was paid for out of community property was not in itself sufficient to warrant conclusion that the land became community and not wife's separate property.

3. **Husband and wife 266 — Land conveyed to wife held her separate property, though paid for with community funds.**

In absence of a showing that conveyance of land to wife for payments out of community property was in fraud of rights of existing creditors, or that husband for any reason could not by gift to wife make the land a part of her separate estate, the land on wife's death is a part of her separate estate and not community property.

4. **Partition 109(7)—Interest of heir not a party chargeable with proportionate share of vendor's lien notes.**

Where land was sold to holder of vendor's notes upon partition of purchaser's land following purchaser's death, the court in decreeing minor heir, who was not a party to the partition proceeding, his portion of interest in land, properly charged such interest with the payment to holder of his proportionate share of the amount of vendor's lien notes held by him.

5. **Partition 109(7)—Undivided interest of minor heir not a party will pass by sale, where share is paid to such heir by purchaser.**

Court, in decreeing minor heir who was not a party to partition proceeding a one-sixth undivided interest in the land sold, may decree that purchaser may by payment of specified amount to such heir acquire his interest in the land.

6. **Partition 109(7)—Refusal to award heir not a party rental value held proper, where purchaser received no rents.**

Court, in decreeing minor heir an undivided interest in land sold pursuant to partition proceedings to which he was not a party, properly refused to award him the rental value of land, where purchaser had not in fact received any rent for property during time he had been in possession.

Appeal from District Court, Harrison County; J. R. Warren, Judge.

Suit by B. S. Zellner, guardian, against A. I. Samuelson and others, consolidated with suit by Belle Harrison and others against Gussie Thompson and others. From judgment rendered, plaintiff B. S. Zellner, guardian, appeals. Affirmed as reformed and remanded with directions.

By his first wife, Sarah, who died August 5, 1884, A. A. Goodwyne had three children: Belle, a daughter, who married W. N. Harrison; Jessie, a daughter, who married C. C.

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Butler; and Clifford, a son, who died intestate and without issue September 11, 1899. By his second wife, Eddie, whom he married May 14, 1889, and who died intestate March 4, 1911, said A. A. Goodwyne had two children: Gussie, a daughter, who married Robert Thompson; and G. B., a son, born September 29, 1898. A. A. Goodwyne and his first wife owned as community property between them at the date of her death two parcels of land in the city of Marshall, conveyed to them by one Fraley. After the death of his said first wife, to wit, December 21, 1888, A. A. Goodwyne conveyed a part of one of said tracts of land to his daughter Mrs. Harrison, and another part thereof to his daughter Mrs. Butler, in satisfaction of the interests they respectively owned in the community half of their mother in the two tracts. By a deed of gift dated October 1, 1892, A. A. Goodwyne conveyed a part (designated in the record as the "home place") of the other tract to his second wife. By a deed dated October 25, 1895, Mrs. Harrison joined by her husband conveyed the part her father had conveyed to her of the land belonging to the community estate between him and her mother to said Mrs. Eddie Goodwyne. By a deed dated December 19, 1902, J. E. Sheppard conveyed lots 1 and 4, in block 10, designated in the record as the "Samuelson tract or lots," to said Mrs. Eddie Goodwyne. By a deed dated April 17, 1906, J. I. Carter conveyed a lot designated in the record as the "Goldberg lot or tract" to said Mrs. Eddie Goodwyne; and by a deed dated August 1, 1907, said Carter conveyed a lot designated in the record as the "Kottle tract or lots" to said Mrs. Eddie Goodwyne. The lots so conveyed to said Mrs. Eddie Goodwyne were not in any way disposed of by her, or by her husband, during her lifetime. After her death in 1911, her husband, said A. A. Goodwyne, for himself and as guardian of his minor son G. B. Goodwyne, commenced in the district court of Harrison county a suit, numbered 1338, against Mrs. Gussie Thompson and her husband, Robert Thompson, and one Powers and others as trustee of the John M. Gibson Lodge, I. O. O. F., to partition all the land hereinbefore referred to, except the part of the two tracts belonging to the community estate of the first marriage conveyed by A. A. Goodwyne to his daughter Mrs. Butler. By a decree rendered in said court August 9, 1912, the court determined that all the land belonged to the community estate of the second marriage, that A. A. Goodwyne owned an undivided one-half thereof, and that Mrs. Thompson and G. B. Goodwyne each owned an undivided one-fourth thereof. The court further determined that the community estate of the second marriage was indebted to various named persons in various named sums. He further determined that the tracts designated in

the record as the "Kottle lots," the "Goldberg tract," and "lot 8A," were "incapable of partition," and directed one Gehlen, whom he appointed receiver, to sell the same, reporting the sale to him. The court appointed commissioners and directed them to partition the tract designated as the "home place" and said lots 1 and 4, block 10—one-half to A. A. Goodwyne, one-fourth to Mrs. Gussie Thompson, and one-fourth to G. B. Goodwyne. The receiver having reported a sale he made of the "Goldberg tract" to H. Goldberg, the court by an order made August 12, 1912, confirmed same; and the receiver having also reported a sale he made of the "Kottle lots" to J. L. Kottle, the court by an order made January 7, 1913, confirmed same. The court's instruction to the receiver to sell lot 8A was not complied with, it seems. The report of the commissioners appointed to partition the other tracts, that they had set apart the "home place" to the minor G. B. Goodwyne, lot 1, in block 10, to A. A. Goodwyne, and lot 4, in block 10, to Mrs. Gussie Thompson, was approved by an order made by the court October 2, 1912. A. A. Goodwyne and Mrs. Gussie Thompson afterwards conveyed said lots 1 and 4 to A. I. Samuelson. A. A. Goodwyne died February 4, 1916. Appellant B. S. Zellner, as guardian of the minor G. B. Goodwyne, claimed that the land involved in the suit above referred to, instead of being community property of the second marriage, belonged to the separate estate of Mrs. Eddie Goodwyne, his ward's mother; and, alleging that the judgment and orders in said suit were invalid so far as they affected the rights of his ward, sought by a suit he commenced June 5, 1917, against Lena Goldberg, J. L. Kottle, Gussie Thompson, her husband R. Thompson, A. J. Samuelson, W. H. Strength as administrator of the estate of A. A. Goodwyne, deceased, John G. Brown, Jessie Butler, and her husband C. C. Butler, Belle Harrison, and her husband W. N. Harrison, and John M. Gibson Lodge, I. O. O. F., to have said judgment and orders vacated and annulled, to have the deeds made by the receiver Gehlen to Goldberg and Kottle, respectively, canceled, and to recover a one-half interest in each of the tracts of land involved in said suit No. 1338. By order of the court appellant Zellner's suit was consolidated with a suit commenced by Mrs. Harrison and her husband and Mrs. Butler and her husband April 13, 1917, against Gussie Thompson and her husband R. Thompson, the minor G. B. Goodwyne and his guardian Zellner, and W. H. Strength as administrator of the estate of A. A. Goodwyne, deceased, to partition the tract hereinbefore referred to as "lot 8A." The trial was before the court without a jury and resulted in a judgment declaring the decree hereinbefore referred to as having been rendered August 9, 1912, in the suit

numbered 1338 brought by A. A. Goodwyne for himself and as guardian of his minor son, G. B. Goodwyne, to be void as to said minor, but "in all other things binding upon Mrs. Gussie Thompson, A. A. Goodwyne, and the administrator of A. A. Goodwyne," and further adjudging as follows: (1) In favor of the heirs of H. Goldberg, deceased, for the "Goldberg tract." (2) In favor of J. L. Kottle for the "Kottle lots." (3) In favor of G. B. Goodwyne for an undivided $17/18$ interest, and in favor of Mrs. Harrison and Mrs. Butler for an undivided $1/36$ interest each, in the "home place." Having determined that this tract was "incapable of partition," the court directed that it "be sold for the purpose of partition" among said owners. (4) In favor of A. I. Samuelson for a $3/4$ undivided interest, and in favor of G. B. Goodwyne for the other $1/4$ undivided interest in lots 1 and 4, block 10. The court directed that this property be sold for the purpose of a partition, unless Samuelson should pay G. B. Goodwyne $125 within 20 days from the date of the judgment, in which event Samuelson was to hold the lots free of any claim thereon in favor of said G. B. Goodwyne. (5) In favor of parties now to be named for undivided interests now to be specified in lot 8A: Mrs. Harrison and Mrs. Butler $1/36$ each, and Mrs. Gussie Thompson and G. B. Goodwyne $1/72$ each, as heirs of Clifford Goodwyne, deceased; and said Mrs. Harrison, Mrs. Butler, Mrs. Thompson, and G. B. Goodwyne $1/4$ each as heirs of A. A. Goodwyne, deceased, in the $66/72$ interest owned by said A. A. Goodwyne at the date of his death, but subject to the debts he then owed. Having found that the estate of said A. A. Goodwyne, deceased, was undergoing administration in the probate court for the purpose of paying debts, and that said estate was insolvent, the trial court directed that this part of his judgment be certified to said probate court for observance. (6) In favor of John Brown and the I. O. O. F. Lodge for their costs. The appeal is by the guardian of the minor G. B. Goodwyne alone.

Cary M. Abney and George L. Huffman, both of Marshall, for appellant.

Scott & Lane, A. G. Carter, and Davidson & Blalock, all of Marshall, for appellees.

WILLSON, C. J. (after stating the facts as above). The only lands belonging to the community estate of the first marriage at the date of the death of the mother of Mrs. Harrison, Mrs. Butler, and Clifford Goodwyne, were the two tracts conveyed to A. A. Goodwyne by J. U. Fraley. A. A. Goodwyne conveyed one of the tracts to Mrs. Harrison and Mrs. Butler, and by a deed of gift conveyed a part of the other tract (identified as the "home tract") to his second wife. The part left unconveyed of one of the tracts is identified in the record as "lot 8A." It appears, from a finding which the parties treat as warranted by testimony, that Mrs. Harrison and Mrs. Butler each had received the interest she was entitled to in said lands as an heir of her mother, and from another finding that the interest they still respectively owned was $1/36$ each as an heir of their brother Clifford in said lot 8A and the part of the tract given by A. A. Goodwyne to his second wife, referred to above as the "home tract." The court found that the minor G. B. Goodwyne owned the remaining $34/36$ interest in the "home tract," further found that the tract was not capable of partition between the owners except by a sale thereof, and in the judgment he rendered directed that same be sold for the purpose of effecting a partition thereof. Appellant insists that the court should have satisfied the interest of Mrs. Harrison and Mrs. Butler in said "home tract" out of lot 8A, and that the judgment is erroneous in so far as it awarded them an interest in the "home tract" and directed a sale of that tract. As a support for his contention, appellant relies on cases like Furrh v. Winston, 66 Tex. 521, 1 S. W. 527, where the Supreme Court said:

"While a cotenant has no power to divest the title of his co-owners by selling a specific part of the common property, yet it is well established that a court of equity will protect such a purchaser, if this can be done without injury to the other owners, by setting apart to the vendee of the cotenant the particular tract bought."

[1] We have been referred to and have found no case where the rule stated has been applied where the grantee was not a purchaser from but was a donee of the cotenant. While no reason now occurs to us why it should not be applied to a donee in a case in other respects within it, we will not determine whether it should or not, for it does not appear that this case is in other respects within the rule, in that it does not appear that it can be applied in favor of the donee's heirs without injury to others concerned. The court found that the estate of A. A. Goodwyne, deceased, consisted of a $66/72$ interest in lot 8A and was indebted in sums exceeding the value of his said interest in said lot. So it is plain the effect of requiring the interest of Mrs. Harrison and Mrs. Butler in the "home place" to be satisfied out of lot 8A would be to injure either Mrs. Harrison and Mrs. Butler or the creditors of A. A. Goodwyne, deceased, for if that interest was so satisfied the value of the property to which the creditors have to look for payment of their claims would be decreased to that extent; and if, because the claim of the creditors on that lot was entitled to priority, said interest was not satisfied, Mrs. Harrison and Mrs. Butler would suffer the loss of the value thereof. The tract of land identified in the

record as the "Goldberg tract" was conveyed to Mrs. Eddie Goodwyne by J. I. Carter by a deed dated April 17, 1906. The consideration for the conveyance, it appeared, was $50 in cash and $1,950 in the 39 promissory notes for $50 each made by said Mrs. Eddie Goodwyne and her husband, A. A. Goodwyne, payable one each month after the date of said deed. In the deed was a recital that the sale and conveyance was to "Mrs. Eddie Goodwyne (to her separate estate) and to her heirs." The land identified in the record as the "Kottle lots" was conveyed to said Mrs. Eddie Goodwyne by said J. I. Carter by a deed dated August 1, 1907. The consideration for the conveyance, it appeared, was $100 in cash and $1,150 in the 46 promissory notes for $25 each made by said Mrs. Eddie Goodwyne and her husband, A. A. Goodwyne, payable one each month after the date of the deed. In the deed was a recital that the sale was made to said "Mrs. Eddie Goodwyne for her separate use and benefit." The trial court found the fact to be that the entire consideration for each of the conveyances to Mrs. Eddie Goodwyne was paid by her husband, said A. A. Goodwyne, with money belonging to the community estate between them, and concluded that the two tracts therefore belonged to said community estate. Both the finding and the conclusion based on it are attacked as erroneous.

[2] We think the finding was warranted by testimony before the court, but do not agree that the fact alone that the land was so paid for warranted the conclusion that it was community property and not a part of Mrs. Eddie Goodwyne's separate estate. Bank v. Hall, 30 S. W. 73; Markum v. Markum, 210 S. W. 835; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; McCutchen v. Purinton, 84 Tex. 604, 19 S. W. 710; McClintic v. Midland Grocery Co., 106 Tex. 32, 154 S. W. 1157. The instant case, so far as the question now being considered is concerned, is not materially different in its facts from the case first cited above. There, as here, the conveyance was to the wife, the consideration being promissory notes made by her and her husband, which were paid with funds belonging to the community estate. There, as here, the deed contained a recital that the wife was to have and hold the land as her separate property. There, as here, it was contended that the land was community because it was purchased on a credit and paid for with funds belonging to the community estate between the grantee and her husband. The contention was overruled in an opinion so applicable to the instant case that we quote the greater part of it:

"Where lands," said Judge Finley, speaking for the Court of Civil Appeals, "acquired by onerous title during the existence of the marital relation, are conveyed by deed to the wife, in the absence of recitals in the deed to the contrary, it will be presumed that the property was purchased with community funds, and that it was intended to be held as community property. This presumption may be overcome by proof that the property was purchased with the separate estate of the wife, or that it was the intention of the husband in causing the deed to be made to her to make it her separate property. [Citing authorities.] When the deed to the wife expresses the intention that the property is designed to be her separate property, although the property be paid for out of community funds, as between the wife and the husband, or those claiming under him, with notice, it is her separate estate. In McCutchen v. Purington, 84 Tex. 604 [19 S. W. 710], Henry, J., speaking for the court says: 'When the husband is solvent, he can convert community property into the separate property of the wife. If he causes a deed for property paid for with community funds to be made to the wife for her separate use, and causes the deed to so recite, it would vest the title in the wife as her separate estate. The husband has the management of both the community property and the separate estate of his wife; and when a deed containing recitals like the one now under consideration is found to have been made during the existence of the marriage, and no evidence is offered to explain it, the presumption must be indulged that it was made with the knowledge and consent of the husband, and for the purpose of making the property the separate estate of the wife. Such transaction may be intended as a fraud upon creditors, and may be attacked upon that ground, but no such issue was made in this case.' * * * In the case under consideration, while the property was paid for with community funds, the deed is made to the wife, and clearly recites the intention that the property is to be her separate estate. It was shown that her husband was insolvent at the time the deed was made; but appellant was not then, nor now, a creditor of the husband, and that fact alone does not render the conveyance subject to attack by it. It was not shown that the deed was made to the wife for the purpose of covering up the property from creditors, or that it was to be held for the benefit of the community. The issue of fraud in the conveyance does not arise in this case. The appellant, not being a creditor, is not in a position to attack the conveyance as being fraudulent against creditors, upon the ground that the husband was in debt, and could not make a gift of property to his wife, as against creditors."

[3, 4] It does not appear from any finding of the trial court, or from testimony in the record, that the conveyance by Carter of the "Goldberg tract" and the "Kottle tract" to Mrs. Eddie Goodwyne in her separate right was in fraud of rights of then existing creditors, or that her husband for any reason could not by gift to her make the land a part of her separate estate. We conclude, therefore, on the authority of the cases cited, that the trial court erred when he determined that said tracts belonged to the community estate of the second marriage and not to the separate estate of Mrs. Eddie Goodwyne.

Belonging, as we think it appeared both said tracts did, to the separate estate of appellant's ward's deceased intestate mother, no reason is apparent in the record why the minor should not have been awarded a recovery as prayed for of an undivided one-half of the "Goldberg tract." A different situation is presented as to the "Kottle tract." That tract, it appears, was sold to Kottle for $2,000 to satisfy debts of the community estate of the second marriage, among which was one for $485.75 in favor of one Brown, who owned several of the notes made to Carter, representing a part of purchase money said estate owed for the land. Said indebtedness of $485.75 was secured by the vendor's lien retained on the land by Carter at the time he conveyed it to Mrs. Eddie Goodwyne. Therefore, while the recovery in favor of the minor should also be for an undivided one-half of this tract, it should be charged with the payment to Kottle of one-half of said sum of $485.75. The trial court found that the minor owned a one-fourth undivided interest in lots 1 and 4, block 10, known as the "Samuelson lots," but concluded that a fair adjustment of equities be found to exist between the minor and his father and sister, who owned the other three-fourths and whose rights Samuelson had acquired, entitled Samuelson to all the land on payment of $125 to the minor. The theory on which the trial court acted, it seems, was that, notwithstanding the minor was not bound by the partition which the court undertook to make in 1912, in suit No. 1338, the rights of others predicated on the validity of the judgment then rendered should be disturbed only when and so far as it was necessary to disturb them to enforce superior rights in the minor. In that suit the court allotted the "home place" to the minor; lot 1, block 10, to his father; and lot 4, block 10, to his sister. The court was of opinion in the instant case that the allotment as made by the court in said partition attempted in 1912 would have been a fair one to the minor had the "home place" belonged, as the court in that case assumed it did, wholly to the minor and his sister and father, and was unfair to the minor because Clifford Goodwyne, who was not a party to that suit, owned a one-sixth undivided interest in the land. In the instant case the court below found that the difference between the value of the "home place" (less the interest of Clifford Goodwyne therein), which he awarded to the minor, and the value of the interest the minor owned in that place and lots 1 and 4, block 10, was $125, and concluded that the rights of both the minor and Samuelson would be most effectually conserved by permitting the latter to pay the former said $125 and take the lots free of his claim thereon.

[5, 6] It is insisted that the trial court was without power to divest the minor of his title to an interest in said lots 1 and 4. We think the contention should be overruled. That the court had such power on the facts as he found them to be seems to be established by the authorities. 30 Cyc. 238, and authorities there cited; Stone v. McGregor, 99 Tex. 51, 87 S. W. 334; Ferguson v. Stringfellow, 47 Tex. Civ. App. 449, 106 S. W. 762. It is further insisted that the adjustment made by the trial court wronged the minor because Samuelson should have been and was not charged with the payment to the minor of a part of the rents accruing from the lots awarded to Samuelson. It appears from the court's findings that the rented value of the lots from the time Samuelson took exclusive possession of same was $25 per month, but it does not appear that Samuelson in fact received anything as rent on the property during the time he had such possession, nor does it appear that the minor ever demanded of Samuelson and was refused a right to share with him the possession and use of the lots. Under these circumstances, we do not think it should be held that the trial court erred when he failed to award the minor a recovery of anything on account of rents. Thompson v. Jones, 77 Tex. 626, 14 S. W. 222; Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20.

The judgment will be so reformed as to award the guardian of the minor G. B. Goodwyne (1) a recovery of an undivided one-half of the "Goldberg tract"; and (2) a recovery of an undivided one-half of the "Kottle tract," but charged with the payment to Kottle of one-half of the $485.75 purchase money due to Brown; and (3) as to strike out and annul the part thereof which directs that the part relating to lot 8A be certified to the probate court for observance in the matter of the administration pending on the estate of A. A. Goodwyne, deceased. As so reformed, the judgment will be affirmed, and the cause will be remanded for such further proceedings as may be proper in the court below.