### GOLDBERG et al. v. ZELLNER.
### (No. 276–3510.)

(Commission of Appeals of Texas, Section A. Dec. 21, 1921.)

**1. Husband and wife ⊚═262(1)—Property purchased in wife's name during marriage presumptively community property.**

Property purchased during marriage, though the conveyance be taken in the name of the wife, is presumptively community property.

**2. Husband and wife ⊚═256—How presumption that property purchased in wife's name is community property may be negatived stated.**

The presumption that property purchased during marriage, the conveyance being taken in the wife's name, is community property may be negatived by recitals in the deed showing the consideration paid out of the wife's separate estate, or a gift, or limiting the property to the sole and separate use of the wife.

**3. Husband and wife ⊚═264—Acts and declarations of husband held insufficient to controvert recitals in deed that property belonged to wife.**

The acts of a husband in paying taxes on property purchased in the wife's name during marriage, and otherwise attending the duties incident to ownership with a view to preserve the property together with declarations of ownership in himself in her absence, and not acquiesced in by her, held insufficient to controvert positive declarations in the deed that the property belonged to the wife as part of her separate estate.

**4. Husband and wife ⊚═264—Payments by husband held insufficient to show that property deeded to wife was community property.**

Where property was purchased during marriage, and the conveyance was taken in the name of the wife, that notes given in payment were satisfied out of the husband's salary or monthly earnings held insufficient to show that the property was not the sepa-

rate property of the wife as recited in the deed.

**5. Husband and wife ⊚═171(1)—Wife may pledge real property constituting her separate estate, regardless of character of indebtedness.**

Where property is purchased during marriage, and the conveyance is made to the wife as her separate estate, the wife has a right to pledge such property, regardless of whether the indebtedness for the purchase price is a community debt or not.

**6. Husband and wife ⊚═150—Wife's separate estate liable for expenses incurred by husband for preservation, management, or improvement.**

The separate estate of the wife is liable for the payment of necessary and reasonable expenses incurred by the husband for either the preservation, management, or improvement of her separate property.

**7. Partition ⊚═109(7)—Purchaser on sale void as to minor entitled to refund on payments received by minor's estate.**

Where partition sale of land is void as to a minor who has an interest therein, the purchaser is nevertheless entitled to a refund of the money received by the minor's estate, and where title is vested in such minor he takes it charged with the amount which his estate has received.

**8. Partition ⊚═109(3)—Minor's remedy for unlawful expenditures of purchase price by guardian not against purchaser.**

Where moneys received by a guardian from a partition sale were unlawfully expended by him, the minor's remedy was against the guardian and his sureties and not against the purchaser of the minor's property.

**9. Partition ⊚═109(7)—Minor held properly charged with one-half of payment of purchase price on setting aside judgment in partition.**

Where property constituting the separate estate of a married woman was after her death sold in partition proceedings as property of the community under a judgment disregarding the rights of a minor child, and a balance of indebtedness on the purchase price was paid out of the proceeds, held, in a subsequent suit to set aside the judgment, that only one-half of the payment on the balance of the purchase price was chargeable to the minor's interest, notwithstanding that the purchaser had paid the full purchase price, which the receiver acting under orders of the court had disbursed as though the minor did not own a half interest as heir of his mother.

**10. Husband and wife ⊚═55—At common law, legal existence of wife merged in that of husband.**

At common law the legal existence of the wife is merged in that of the husband, her personal property vesting in him, and the right to dispose of her real property being taken from her and its fruits given to the husband.

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

11. Executors and administrators ⊚⇒214—
Statute making funeral expenses first-class
claim against decedent's estate applicable to
estate of married woman.

Rev. St. 1911, art. 3458, making funeral
expenses a claim of the first class against the
decedent's estate, is applicable to the estate
of a married woman.

12. Husband and wife ⊚⇒273(4)—Separate
estate of wife and community estate alike
primarily liable for wife's funeral expenses.

In view of Rev. St. 1911, art. 4622, allow-
ing a wife to have a separate estate, and
article 4625, making both the community and
the separate estate liable for necessaries for
the wife and children, and notwithstanding
article 3458, making funeral expenses a claim
of the first class against the decedent's estate,
the separate estate of the wife and the com-
munity estate are alike primarily liable for
the wife's funeral expenses; and, if they are
incurred on the sole responsibility of the
husband, the community is liable without right
of contribution from the separate estate, but
if they are incurred on the credit of the wife's
separate estate, such estate is also primarily
liable therefor.

Error to Court of Civil Appeals of Sixth
Supreme Judicial District.

Suit by B. S. Zellner, guardian of the es-
tate of G. B. Goodwyne, a minor, against
Lena Goldberg and others, to set aside a
judgment. On plaintiff's appeal from the
judgment rendered, the Court of Civil Ap-
peals reformed the judgment and remanded
the suit, with directions (220 S. W. 587), and
defendants bring error. Reversed and re-
manded, as recommended by the Commission
of Appeals.

Davidson & Blalock, of Marshall, for plain-
tiffs in error.

Cory M. Abney and Geo. L. Huffman, both
of Marshall, for defendant in error.

SPENCER, P. J. On April 17, 1906, Jesse
I. Carter deeded to Mrs. Eddie Goodwyne,
wife of A. A. Goodwyne, for her separate
use and benefit, the lot or tract of land de-
scribed in the pleadings, hereinafter referred
to as the Goldberg lot. The consideration
was $2,000 — $50 paid in cash and the bal-
ance in monthly installments of $50 each,
evidenced by 39 vendor's lien notes.

On August 1, 1907, Jesse I. Carter deeded
to Mrs. Eddie Goodwyne, for her separate
use and benefit, another lot or tract of land
described in the pleadings, hereinafter re-
ferred to as the Kottle tract. The deed re-
cited a consideration of $1,250 — $100 paid
in cash and the balance in monthly payments
of $25 each, evidenced by 46 vendor's lien
notes.

Mrs. Goodwyne died intestate on March 4,
1911, leaving as her sole heirs her husband,
A. A. Goodwyne, and their two children,
G. B. Goodwyne, then a minor, and Gussie

Goodwyne Thompson, wife of Robert Thomp-
son. A. A. Goodwyne was appointed and qual-
ified as guardian of the estate of the minor
son, and continued in that capacity until
January 10, 1914. He died on February 4,
1916.

On August 9, 1912, A. A. Goodwyne, as
guardian of the estate of G. B. Goodwyne,
and for himself individually, filed suit No.
1338 in the district court of Harrison county,
Tex., styled A. A. Goodwyne et al. v. Mrs.
Gussie Thompson et al., to partition six
tracts or parcels of land—the two tracts
above referred to being included—alleging
them to be the community property of him-
self and his deceased wife. G. B. Goodwyne
was not served with process in that suit;
neither was he represented by a next friend
or guardian ad litem.

On the day that the suit was filed, judg-
ment was rendered adjudging the six tracts
of land to be the community property of A.
A. Goodwyne and wife, Eddie Goodwyne,
and decreeing the two tracts which are the
subject of the present controversy incapable
of partition, and ordering them sold for the
payment of community debts. M. W. Gehlen
was appointed receiver to sell the property,
with power to employ a real estate broker
to assist in the sale.

One of these tracts was sold to H. Gold-
berg for $1,800 cash, and the proceeds or-
dered disbursed as follows: First, payment of
all costs; second, the claim of W. B. Allen
for the sum of $713, which represented the
amount of a note held by him, executed by
Mr. and Mrs. Goodwyne and secured by deed
of trust upon the property; third, the claim
of W. G. Rudd of $113.50; fourth, the claim
of the Odd Fellows Lodge for $371; fifth,
the claim of R. L. George for the sum of
$90 for making the sale of the property;
sixth, $250 to be paid to Mrs. Thompson to
be charged against her interest in the funds
derived from the sale of the property; the
remainder one-half to be paid to A. A. Good-
wyne as guardian and one-half to himself
individually. The final account of A. A.
Goodwyne shows that he charged himself
as guardian with the sum of $133, the money
received from this source.

The other tract was sold to J. L. Kottle
for $2,000, cash and the receiver ordered to
pay John G. Brown the remaining unpaid
purchase price, amounting to $484.75, and the
balance was ordered paid to discharge var-
ious other items, including funeral expenses
of Mrs. Eddie Goodwyne, amounting to $133.-
25, and the sum of $50 paid to G. M. Mc-
Daniel, a dealer in tombstones.

Defendant in error, B. S. Zellner, appoint-
ed guardian of the estate of G. B. Goodwyne
subsequent to the discharge of A. A. Good-
wyne, filed this suit June 5, 1917, in behalf
of the minor, to annul and vacate the judg-
ment rendered in cause No. 1338, and to re-

cover a one-half interest in the lands described in the pleadings in that suit, which included the two lots in controversy.

The action to set aside the judgment was predicated upon the ground that G. B. Goodwyne was not properly before the court in that suit; that he was entitled to a one-half interest in the lots because they were the separate property of Mrs. Eddie Goodwyne, his mother, and not the community property of Eddie Goodwyne and A. A. Goodwyne, as the former judgment decreed.

H. Goldberg and wife, Lena Goldberg, J. L. Kottle, Robert Thompson and wife, Gussie Thompson, and others not necessary to enumerate in view of the judgment rendered and not appealed from, were named defendants in the suit. H. Goldberg having died during the pendency of the suit, his sole surviving heirs were made parties defendant. The case was tried before the court without a jury, and the court among other things found that the former suit was void as to G. B. Goodwyne; that the Goldberg and Kottle tracts were the community property of A. A. Goodwyne and wife, Eddie Goodwyne, and were sold to pay the community debts.

Upon appeal the honorable Court of Civil Appeals concluded that the Goldberg and Kottle tracts belonged to the separate estate of Mrs. Eddie Goodwyne, and not to the community estate. It reformed the judgment so as to award the guardian of the minor a recovery of an undivided one-half interest in the Goldberg tract, and an undivided one-half interest in the Kottle tract, but charged the latter with the payment to Kottle of one-half of the $484.75 purchase money paid to Brown out of the proceeds of the sale to Kottle. 220 S. W. 587.

[1, 2] In our opinion the honorable Court of Civil Appeals rightly held that the property in controversy was the separate property of Mrs. Eddie Goodwyne. It is the settled law of this state that property purchased during marriage, though the conveyance be taken in the name of the wife, is presumptively community property. Mitchell v. Marr, 26 Tex. 330. This presumption may be negatived, however, by recitals in the deed showing the consideration paid out of the separate estate of the wife, or a gift, or limiting the property to the sole and separate use of the wife. Laufer et al. v. Powell et al., 30 Tex. Civ. App. 604, 71 S. W. 549 (writ of error denied).

[3] The recitations in the deeds limiting the title to the sole and separate use of Mrs. Goodwyne unmistakably evidence an intention to transfer the land to her separate estate. There is in the record no evidence of sufficient probative force to set these recitals at naught. It is not a suit attacking the conveyance to the wife as being in fraud of creditors. The acts of A. A. Goodwyne in paying taxes on the property, and other-wise attending to the duties incident to ownership with a view to preserve the property, are entirely consistent with the right given him by law to manage and control her separate property. His declarations of ownership of the property in himself, made in her absence and not shown to have been acquiesced in by her, are wholly insufficient to undermine the positive declarations in the deeds.

[4] In arguing that the land is community property, plaintiffs in error lay much stress upon the fact that the notes, given in payment of the property, were satisfied out of the husband's salary, or monthly earnings. Where the rights of creditors are not involved, no reason is perceived why the husband may not make a gift of his future earnings to his wife by causing a conveyance to be taken in her name and contracting to pay the deferred payments out of his future earnings. As plaintiffs in error do not occupy the position of creditors, they cannot complain of the act of the husband in causing his future acquisitions to be thus conveyed to the wife for her separate use and benefit, which would, in the absence of the intention to make a gift of them to her, be community property. Swearingen v. Reed et al., 2 Tex. Civ. App. 364, 21 S. W. 383.

In view of our conclusion that the property was the separate property of the wife, it is necessary to notice some of the various items paid out of the proceeds of the sale of the lots to determine whether the property may properly be chargeable therewith, as it does not appear from the record as a matter of law that the items represent community debts.

[5] We will first notice the items paid from the proceeds of the Goldberg sale. The record, aside from the recital in the judgment in cause No. 1338, does not reveal the character of the indebtedness amounting to $715 represented by the deed of trust lien on that property. That judgment recites that the indebtedness which the lien was given to secure was incurred for and the money used in the improvements placed upon the Goldberg property. But, regardless of the character of indebtedness—whether a community debt, the individual obligation of the husband or another, or a debt contracted solely for the benefit of her separate estate—she had the undoubted right to pledge this property to secure it, and, having executed the conveyance in the mode pointed out by law, the property would be liable therefor, unless her status was that of surety, and there was a discharge of the deed of trust lien in some manner, of which there is no suggestion in the record.

The claim of the Odd Fellows Lodge for $371 stands upon a somewhat different basis, in that the debt was contracted solely by the husband. The testimony of those with whom he negotiated in securing the loan is

to the effect that the money was necessary to protect some property, apparently the Goldberg lot, which he was about to lose. The judgment in cause No. 1338 recites that the $371 represents a part of the purchase price of certain lots of the property described in that judgment.

[6] The separate estate of the wife is liable for the payment of necessary and reasonable expenses incurred by the husband for either the preservation, management, or improvement of separate property. Cartwright v. Hollis, 5 Tex. 152; Milburn v. Walker, 11 Tex. 329. It does not appear from the record as a matter of law what the character of the indebtedness was—whether a separate or a community debt. But if upon another trial it should be established that the indebtedness was incurred for either the preservation, management, or improvement of the wife's separate estate, or that it represents the purchase price of the property, the minor's interest should be charged with one-half of the amount of the claim.

[7] It is certain that A. A. Goodwyne acknowledged receiving, and charging himself, as guardian, with. the sum of $133.50, proceeds from the sale of this lot, and so reported to the probate court in his final account to that court. Though the sale was void as to the minor, nevertheless the purchaser is entitled to a refund of the money received by the minor's estate (G. H. & S. A. Ry. Co. v. Blakeney, 73 Tex. 180, 11 S. W. 174); and to this end, in vesting title to the lot in the minor, he should take it charged with the amount which his estate thus received.

[8] Defendant in error Zellner insists, however, that, as the amount thus received was paid out of the corpus of the minor's estate by the former guardian, without the necessary order of court, the purchaser is not entitled to a refund of the amount which the minor's estate received. That the amount may have been paid out without such an order is no concern of the purchaser. If the amount so received by the guardian was not lawfully expended by him, the minor's remedy for a breach of this duty upon the part of the former guardian is against that guardian and his sureties upon his bond. Kendrick v. Wheeler, 85 Tex. 247, 20 S. W. 44.

[9] Among the items paid out of the proceeds of the Kottle tract was the indebtedness due John G. Brown for $484.75, representing a part of the purchase price of that tract. The Court of Civil Appeals correctly held that only one-half of this amount was chargeable to the minor's interest in the property. By purchasing the interest of Mrs. Thompson, Kottle took whatever interest she had in the lot, and no more. He stood in her place. But the minor cannot be made to suffer, and his land charged with the full amount of the indebtedness. He was not a party to the transaction. Kottle supposedly purchased a complete title to the property, but in reality only a one-half interest therein. Under a mistaken view of his rights he paid the full purchase price, and the receiver, acting under the orders of the court, disbursed it as though the minor, who was not properly represented in that suit, did not own a one-half interest as heir of his mother. Having paid the full amount of the unpaid purchase price, the minor's interest should be charged to the extent of one-half thereof, and no more.

Plaintiffs in error concede that the item of $133.25 paid to Rains and Herndon and the item of $50 paid G. M. McDaniel out of the proceeds of the sale were for the funeral expenses of Mrs. Goodwyne. They contend, however, that these items are proper charges against her separate estate.

[10] At common law the legal existence of the wife is merged, for the most part, in that of the husband. By marriage, her personal property vests in him; the right to dispose of her real property is taken from her, and its fruits given to the husband. Black v. Bryan, 18 Tex. 453. Because of her subjection to and dependence upon him springs the prime duty to maintain and support her; in other words, to provide her with necessaries. Involved in the duty of maintaining her while living is the duty of burying her upon death.

By our statute, the harsh common-law rule has been somewhat ameliorated by the creation of the community estate and the vouchsafing to the wife of a separate estate. Article 4622, Rev. Civ. Stat. 1911. But the right to manage and dispose of community property during coverture rests exclusively with the husband, and subjects him to the corresponding duty of maintaining his wife and family, and defraying out of this property the debts contracted during marriage. 10 Tex. 130.

The wife may, however, contract necessaries for herself and children, and, in the event of a judgment establishing that the expenses so incurred were reasonable and proper, the court shall decree that execution be levied upon the community, or the separate estate of the wife, as the plaintiff may elect. Article 4625, Rev. Civ. Stat. of 1911. The granting of the right to the wife to charge her separate property, as indicated, does not exempt the community property from liability. Moody, Adm'r, v. Smoot, 78 Tex. 119, 14 S. W. 285. Both estates are primarily liable.

[11] By analogy the community estate is primarily liable for her funeral expenses, unless it is made secondarily liable in virtue of article 3458 of Rev. Civ. Stat. 1911, which makes the funeral expenses a claim of the first class against the decedent's estate. It cannot be doubted, we think, that the stat-

ute is applicable to the estate of a married woman. McClellan v. Filson, 44 Ohio St. 184, 5 N. E. 861, 58 Am. Rep. 814; Buxton v. Barrett, 14 R. I. 40. But whether it has the effect of making the community secondarily liable is the important question. Such was not the intention of the Legislature. The legislative design in enacting the statute was to insure a decedent having an estate an appropriate burial. Clearly the Legislature in enacting this statute was not dealing with relative liability of the community estate and separate estate of. the decedent for the funeral expenses of such decedent. Regardless of the effect that article 3458 may have upon the wife's separate estate—whether it enlarges its liability when it was not otherwise liable, or whether it gives priority to the claim for such expenses for which her estate is primarily liable—it in no wise supersedes or abrogates the liability of the community estate for the obligation. Ketterer v. Nelson, 146 Ky. 7, 141 S. W. 409, 37 L. R. A. (N. S.) 754; Kenyon, Adm'r, v. Brightwell, 120 Ga. 606, 48 S. E. 124, 1 Ann. Cas. 169.

[12] In our opinion the separate estate of the wife and the community estate are alike primarily liable for such expenses. If they were incurred upon the sole responsibility of the husband, or the credit therefor was extended to him, the community would be liable, and there would be no right of contribution to him from her separate estate. Ketterer v. Nelson, supra; Smyley v. Reese, 53 Ala. 89, 25 Am. Rep. 598. If, however, the expenses were incurred on the credit of her separate estate, such estate would also be primarily liable therefor, and payment could be enforced against it. Schneider v. Brier, 129 Wis. 446, 109 N. W. 99, 6 L. R. A. (N. S.) 917; McClellan y. Filson, supra; Nashville Trust Co. v. Carr, 62 S. W. 204.

The authorities upon the question of the husband's right of contribution from the wife's separate estate for her funeral expenses, in the event he pays them, are not in accord. The Supreme Court of Massachusetts, in construing a statute similar to ours, making the funeral expenses a priority claim against the estate, held that, in the event of a payment of them by the husband, he is entitled to recover the amount so paid from her separate estate. Constantinides v. Walsh, 146 Mass. 281, 15 N. E. 631, 4 Am. St. Rep. 311. The Supreme Court of Iowa, by a divided court, in Skillman's Estate, 146 Iowa, 601, 125 N. W. 343, 140 Am. St. Rep. 295, in reaching the same conclusion cited Constantinides v. Walsh with approval. In New York, the necessary and proper funeral expenses are allowed as a charge upon the estate of the decedent, for whose estate they were incurred; but, in the event the decedent be a married woman, and the expenses be paid by .the husband, he is entitled to reimbursement from her personal estate. McCue v. Garvey, 14 Hun (N. Y.) 562.

The record does not reveal whether the funeral expenses in this case were paid by the husband or whether their payment was enforced against the wife's separate estate, and, if this question should arise upon another trial, the principle announced herein should be applied to the facts as may be developed. If it should develop that the husband paid the expenses and reimbursed himself out of the proceeds of the sale, this would not be a proper charge against her separate estate, because he was not entitled to contribution. On the other hand, if these items were paid direct to the holders of the claims in discharge thereof, the same would be a proper charge, because her estate is primarily liable, and the minor's interest should be charged with one-half of the amount of such expenses.

Due to the record not showing, as a matter of law, what the character of the various items of the indebtedness was, it necessitates that the judgment be reversed and the cause remanded for further trial.

We recommend, therefore, that the judgments of the district court and of the Court of Civil Appeals be reversed, and the cause remanded for further trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.