**PAUDLER v. PAUDLER et al.**

No. 14636.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

J. E. Vickers, Lubbock, Tex., Vickers & Vickers, Lubbock, Tex., for appellant Lyda M. Paudler.

E. L. Klett, Lubbock, Tex., W. P. Walker, Crosbyton, Tex., L. A. Wicks, Sr., Ralls, Tex., Klett, Bean & Evans, Lubbock, Tex., for appellee.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The jurisdiction of the district court was sustained on a former appeal, 185 F.2d 901. This appeal is limited to those portions of the district court's judgment holding a 320 acre tract of land in Crosby County, Texas to be community property and not the separate property of appellant and adjudging the consequences flowing from that holding. The Paudlers were married in 1921, and, after living together for more than twenty-seven years, separated in 1948. Mrs. Paudler then established residence in Arkansas, where she obtained a divorce in 1949. That decree did not adjudicate the property rights of the parties, and that was the purpose of the present suit, a purpose fulfilled by the district court to the satisfaction of both parties except as to this one tract of land.

On December 10, 1937, the San Antonio Joint Stock Land Bank executed its deed conveying the 320 acre tract to Lyda M. Paudler, the appellant, for a stipulated consideration of $9,600.00, of which $1,920.00 was cash and the remaining $7,680.00 was represented by purchase money notes signed by Lyda M. Paudler "joined by her husband, G. O. Paudler". The granting clause of the deed reads:

"Has Granted, Sold And Conveyed, and by these presents does Grant, Bargain, Sell And Convey unto the said Lyda M. Paudler, as her separate property and estate, all that certain tract or parcel of land, lying and being situated in Crosby County, Texas, and more particularly described as follows:"

The Habendum clause of the deed reads:

"To Have And To Hold the said above conveyed premises, together with, all and singular, the rights, members, hereditaments, appurtenances and improvements thereunto belonging or in anywise incident or appertaining, unto the said Lyda M. Paudler, as her separate property and estate, her heirs and assigns forever. * * *"

The Resolution of the Executive Committee of the Bank, attached to and forming a part of the deed, authorizes the conveyance of this property to Mrs. Paudler, "the wife of G. O. Paudler, * * * as her separate property and estate." The deed was filed for record on December 27, 1937.

The district court found that:

"The defendant handled the deal for the purchase of above land in 1937 from the San Antonio Joint Stock Land Bank, and in the transaction he directed that the deed be made to his wife, but did not intend that the land should be her separate estate, as recited in the deed, which was drawn by the grantor in San Antonio, Texas, and he did not know of said recitation in the deed at the time it was drawn, nor until the delivery thereof as an executed instrument, when he did read the deed and saw said recitation therein but still believing the land would be community property anyway as he had and still intended, he accepted the deed and put same of record.

"The total consideration paid for said land was $9,600.00, payable $1920.00 cash and the balance as provided in a series of notes signed by both the plaintiff and defendant and maturing over a term of years, and without dispute all of said cash and deferred consideration was paid with community money. Furthermore there is no claim that the grantor agreed or meant to look only to the grantee Lyda M. Paudler and her estate, for the payment of the purchase money notes. The language of the deed raising a presumption that the land was conveyed as separate property of the grantee is contrary to the intent and facts at the time and has been rebutted by the circumstances and proof in this suit."

The evidence most favorable to the appellee Paudler is found in his own testimony in substance as follows. He bought the land in 1937. Mrs. Paudler was with him. He directed the grantor, "to put it in her and my name; but when the deed come back, it was made in her separate estate. And I says, 'Well, we will let it go. It is community property anyhow.' Because I don't know any better." He admitted that, before he accepted the deed and put it on record, he knew its contents.[1] He further testified

that Mrs Paudler never had any separate funds during the marriage or before the marriage, except that she had inherited a very small amount, $75.00; that the cash purchase price of $1,920.00 and the deferred payments of $7,680.00 were made from farming income, that is from community funds. His testimony on the trial that Mrs. Paudler had no separate estate at the time of the marriage was contradicted by his testimony in a deposition preceding the trial.[2]

Mrs. Paudler testified that she and Mr. Paudler had discussed the purchase of this half section of land before the Bank executed the deed; that she had a little money when they married and had loaned it to him to pay on another half section to which he had a deed at the time they married and which he called his.

"And in the meantime I milked cows and sold milk and butter, had chickens and sold eggs, and I took in washing. So when we went to buy this place, well, the down payment, the money that I had saved, well, he put that in my name and said that was to be my place."

Mr. and Mrs. Paudler were the only witnesses whose testimony concerned this issue.

---

1. "Q. All right. Now, you saw that deed before you closed the deal, didn't you? A. I looked at it.

"Q. You read it over, didn't you? A. I doubt it; part of it, I think.

"Q. Well, you remember that I asked you that question in your deposition, don't you, Mr. Paudler? A. Yes, sir.

"Q. And you told me at that time that you read it over. A. Yes, sir.

"Q. And now what is it? Did you read it over or didn't you? A. Well, I am sure I read it over, but—I read it over.

"Q. What? A. I am sure I read it over.

"Q. And you knew at that time that the deed was made to Mrs. Paudler as her separate property and estate, didn't you? A. Yes, sir.

"Q. And you accepted the deed, and you took the deed yourself and closed the deal, didn't you? A. Yes, sir, I accepted

it. But I figured that it was community property.

"Q. I didn't ask you that, Mr. Paudler. I said you accepted it at that time? A. Yes, sir.

"Q. And you went ahead and paid for it and put the deed of record with that in it, didn't you? A. Yes, sir.

"Q. And knowing that that was in that deed ever since before you closed the deal? A. Yes, sir."

2. "Q. Do you know how much money Mrs. Paudler had, if any, when you and she were married? A. At the time she left?

"Q. No, when you were married, do you know? A. It was very little, sir. I don't remember, sir.

"Q. Do you have any idea how much? A. Oh, I would say a thousand dollars, probably.

"Q. A thousand dollars? A. Five hundred, a thousand dollars."

**768**

■ The rule is well settled in Texas that a deed conveying property to the wife in her separate right and estate creates a *prima facie* presumption that same is her separate property, in the absence of evidence to overcome such presumption; and the property so conveyed will be treated as the wife's separate property.[3]

■ It seems further to be settled in Texas that the husband's conclusion as to the legal effect of a deed,[4] or his declarations of ownership, made in the absence of the wife,[5] are not sufficient to overcome the positive declarations in the deed.

The principal insistence of the appellee Paudler is that the deed reciting a cash payment of $1,920.00 and the retention of a vendor's lien to secure payment of purchase money notes for the balance in the sum of $7,680.00 executed jointly by the husband and wife constituted a mere executory contract of sale; that the entire purchase price was paid out of the community; and that: "It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights." Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090, 1091, 1092, quoted in Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881, 884.[6]

■ We conclude, however, from an examination of the Texas cases that, where the rights of creditors are not involved the reservation of the vendor's lien is only for the purpose of enforcing collection of the purchase money, and does not operate otherwise to make the contract executory, Minter v. Burnett, 90 Tex. 245, 38 S.W. 350; and that the property took its status, either as separate or as community, at the time it was deeded; and the fact that the purchase money notes were subsequently paid out of community funds would constitute a gift from the husband and would not change the title. Goldberg v. Zellner, Tex.Com.App., 235 S.W. 870, 872; Wilson v. Wilson, Tex.Civ.App., 200 S.W.2d 258, 260, reversed on other grounds, 145 Tex. 607, 201 S.W.2d 226.

■ We think that the presumption arising from the terms of the deed, that the 320 acre tract of land was the separate property of the wife, was not overcome by any legal or competent evidence. Further, in our opinion, considering all of the evidence to be competent and legal, the plain terms of the deed made in 1937, some ten years prior to the separation, far outweigh the husband's testimony given after the separation and divorce.

■ Since the district court allowed Mrs. Paudler credit for $3,625.00 as her one-half of the $7,250.00 balance of the purchase price owing at the time of marriage on Mr. Paudler's half section of land and thereafter paid out of community funds, Mrs. Paudler concedes in brief that, in the event the half section deeded to her as her separate estate is adjudged to be her separate property, it would more or less "square accounts" for the court to allow Mr. Paudler credit for one-half of the community funds expended for the purchase of her tract, and that she does not contest his right to such reimbursement. We think that is fair,

3. McCutchen v. Purinton, 84 Tex. 603, 19 S.W. 710; Goldberg v. Zellner, Tex. Com.App., 235 S.W. 870; Watson v. Morgan, Tex.Civ.App., 91 S.W.2d 1133.

4. Loeb v. Wilhite, Tex.Civ.App., 224 S.W. 2d 343, 346.

5. Loeb v. Wilhite, supra, note 4; Goldberg v. Zellner, supra, note 3; see also, Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297, 301; McFadden v. McFadden, Tex.Civ. App., 213 S.W.2d 71, 75.

6. Appellee cites also Article 16, Sec. 15 of the Texas Constitution, Vernon's Ann. St.; Articles 4614 and 4619, Sec. 1 of Vernon's Texas Statutes and, among other cases, the following: Kearse v. Kearse, Tex.Com.App., 276 S.W. 690; Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Gorman v. Gause, Tex.Com. App., 56 S.W.2d 855; King v. Bruce, 145 Tex. 647, 201 S.W.2d 803, 171 A.L.R. 1328; Dipuccio v. Hanson, Tex.Civ.App., 233 S.W.2d 863; Hudspeth v. Hudspeth, Tex.Civ.App., 198 S.W.2d 768.

and that the concession should be accepted.

The portions of the judgment appealed from are reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.