RANKIN, COMMISSIONER OF STATE LANDS v. WILLIAMS, CHANCELLOR.

4-9906                                    252 S. W. 2d 551

Opinion delivered November 3, 1952.

Rehearing denied December 8, 1952.

*Ike Murry,* Attorney General, *Francis W. Wilson,* Assistant Attorney General and *Lamar Williamson,* Special Assistant Attorney General, for petitioner.

*Bailey & Warren* and *Bruce T. Bullion,* for respondent.

WARD, J. The petitioner, Claude A. Rankin, State Land Commissioner, asks this Court to prohibit the Chancery Court of Pulaski County, Second Division, from further proceedings in the cause of *R. V. Kimble* v. *Claude A. Rankin, State Land Commissioner,* which is now pending. This petition grows out of a fact situation which is substantially as set out below.

For many years there have existed in the Mississippi River two or more islands on the Arkansas side in Chicot County. One of these islands, designated as Island 87, was owned by one J. W. Griffin. At some time other land came into existence adjacent to and just south of Island 87, either by accretion or as a separate island. It is evidently difficult to tell which way. This is the disputed land involved herein and it is known as Harwood Island. In the year 1933 the said Kimble bought Island 87 together with all accretions thereto belonging. His grantor was the daughter and sole heir of the said J. W. Griffin. When Kimble bought the lands he apparently held back part of the purchase price because of some doubt about the title to the ''accretions,'' but he paid the balance after he learned that other parties had contacted the State Land Commissioner, whose deputy was Claude A. Rankin, to buy the ''accretions'' and were informed that the State had no claim to said lands as ''island lands.'' Following this and on October 20, 1947, Fred P. Branson filed an application with the petitioner, pursuant to Ark. Stats., § 10-602, to purchase Harwood Island in Chicot

County. The petitioner, pursuant to statute, appointed a Special State Land Surveyor to make and file an accurate survey of the lands in question. This survey showed a metes and bounds description of the lands. Kimble filed a protest claiming that the lands were in fact accretions and belonged to him under his deed above mentioned. On this issue petitioner held a series of formal hearings extending over a period of three or four years and he also made, with the consent of the parties, a personal inspection of the lands. The result was that the petitioner, as State Land Commissioner, decided that the lands were formed as an island and announced his intention of conveying the same to Branson under the authority of Ark. Stats., § 10-601. In accordance with the above determination petitioner prepared a deed conveying said lands to Anderson-Tully Company [successor to Branson]. However, before the said deed could be or was delivered, Kimble, in March, 1952, filed suit in the Second Division of the Pulaski Chancery Court to restrain petitioner from delivering the said deed.

The suit filed by Kimble is the one referred to in the first paragraph, and the allegations were substantially the facts set forth in the preceding paragraph. The petition also alleged that Kimble had been misled by the actions of the State Land Commissioner in formerly declaring the lands to be accretions and that the State was therefore estopped, and that Kimble and his predecessors in title had been in adverse possession of the lands for 37 years. A temporary restraining order was issued by the lower court, but action on the permanent order is being withheld, by agreement, pending our decision herein.

The view we take, that a proper interpretation and application of the provisions of the "Island Act," Act 282 of 1917 [set out in Ark. Stats. as §§ 10-601 to 10-607 inclusive], is conclusive of the issue here involved, will eliminate from full discussion many of the issues raised in the briefs. Some of the issues we refer to are estoppel, adverse possession, venue, and suit against the State.

Said Act 282 never contemplated that the State Land Commissioner should do more than make an *initial* determination as to whether lands found in the navigable streams of this state were formed by accretion or as an island. The Act simply provides that when an application is made to purchase such lands the Land Commissioner shall appoint a surveyor to make an accurate description of the same and then, upon completion of the survey, he is instructed to issue ''such muniments of title as is now provided by law for the sale of state lands.'' No provision is made for the Land Commissioner to make a *final* determination as to how the land was formed. If the Act did so provide [for a *final* determination] it might be open to attack as an unconstitutional delegation of judicial powers. It is obvious that before litigation can arise over the question whether certain lands were formed by accretion or as an island, someone must make the initial determination and in doing so must exercise choice or discretion. Act 282 clothed the State Land Commissioner with this choice or discretion. This being true, he had no alternative other than to exercise his discretion when application is made. From *State* v. *Guthrie,* 203 Ark. 60, 156 S. W. 2d 210, we quote, on this point, the following:

''The Land Commissioner, who conveyed for the state, was acting as its agent. He was required to comply with every provision of Act 282 . . .''

''The Supreme Court of the United States [quoting from 22 R. C. L. 455] has repeatedly asserted that all the officers of the government from the highest to the lowest are creatures of the law and bound to obey it . . .'' The last quoted case, which involved an interpretation of the duties of the State Land Commissioner under Act 282, also recognized that the Commissioner was invested with discretion and that his decision was not final. On this point we quote:

''However, this discretion may be abused, and while the presumption is that the Land Commissioner did not abuse his discretion, this presumption is not conclusive,

but may be rebutted by competent proof. We are cited to no statute that would make conclusive this presumption in favor of the validity of the Land Commissioner's act." In *Wunderlich, et al.* v. *Cates, et al.*, 213 Ark. 695, 212 S. W. 2d 556, the court, at page 701 of the opinion, stated: "The State's deed was *prima facie* evidence of ownership." The case of *Conway* v. *Shuck,* 203 Ark. 559, 157 S. W. 2d 777, recognizes the right and duty of the Land Commissioner to exercise his discretion to determine that lands were formed as an island and to issue his deed therefor, and it further recognized, by inference at least, in the last paragraph of the opinion that anyone questioning the correctness of such determination had a right to do so in a court of competent jurisdiction. This right of Kimble in this case to go into a court of competent jurisdiction and litigate the finding of the Land Commissioner [in which he determined the land to be an island] is not only not questioned by petitioner but is positively affirmed repeatedly in the reply brief.

Since the petitioner, as State Land Commissioner, was exercising the discretion given him under Act 282 and was directed under the Act to deliver a deed to the applicant, he was merely acting as an officer of the State in his ministerial capacity and cannot be restrained from so acting by the Chancery Court. This is the settled law in this state.

From *Miller* v. *Tatum,* 170 Ark. 152, 279 S. W. 1002, at page 160, we quote:

"The statutory definition of 'mandamus' is, 'an order of a court of competent and original jurisdiction commanding an executive or ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law.' Crawford & Moses' Digest, § 7021. It is a settled rule of law, recognized by this court in numerous decisions, that mandamus will not lie to control an officer in the performance of a discretionary act nor to control the discretion of an officer in the performance of his duty where such discretion

is vested by law, but will only lie to compel an officer to exercise his discretion where he has refused to act at all.''

The language set out below is found in the case of *Jobe* v. *Urquhart*, 102 Ark. 470, 143 S. W. 121, at page 477:

''. . . this suit must fail, by reason of the well recognized rule of law, adhered to by both the Federal and State courts, that an officer of the executive branch of the government cannot be controlled by the courts in the exercise and performance of his official acts, involving his judgment and discretion. When the courts are called on to review and control the official acts of an officer in a coordinate branch of the government, they should proceed with extreme caution and circumspection, and the right of the courts to exercise this power should be manifestly clear and free from doubt and not made to depend upon uncertainties or the doubtful construction of a statute.''

In 1920 this Court, in *Lewis* v. *Owen*, 146 Ark. 469, 225 S. W. 648, had before it a question similar to the one involved here and involving the duties of the State Land Commissioner under said Act 282 of 1917. There mandamus was brought in the Pulaski Circuit Court to require the Land Commissioner to convey to the petitioner a state deed to lands which he conceived to be formed as an island but which the Land Commissioner decided were not so formed. This Court upheld the trial court in sustaining a demurrer to the complaint and, in so doing, stated, among other things: (a) the legislature constituted the Commissioner as the agent of the State in disposing of island lands and gave him a discretion in the discharge of his duties; (b) the Commissioner's decision [in deciding the lands were not formed as an island] may have been erroneous; (c) but the Commissioner's decision cannot be corrected or controlled by mandamus. This case dealt with § 5 of said Act 282 [Ark. Stats., § 10-605], relating to preference rights of rival claimant to have a deed executed by the Commissioner, and properly held that the Commissioner had the *final* decision as

to whether he would issue the deed on the basis of "island lands" or "accretion." The word *final* appears nowhere else in the act.

In view of the above it is clear that the Commissioner had a right to exercise his discretion and make the decision he did and that he should be allowed to execute and deliver the deed to Anderson-Tully Company. It is also clear that the Pulaski Chancery Court has no jurisdiction to prevent or control his official actions.

Assuming that the Land Commissioner delivers his deed to the prospective purchaser, then Kimble may urge—either in a suit he may institute or in an action brought against him—all claims and defenses that he now has.

Kimble's plea of estoppel cannot be sustained since this plea is not available against the State in circumstances such as are presented here. See: *Woodward v. Campbell*, 39 Ark. 580; *Hankins v. City of Pine Bluff*, 217 Ark. 226, 229 S. W. 2d 231.

It appears that some timber on the land in controversy has been sold, with the consent of all interested parties, and the money is now being held by the Commissioner pending a final determination of Kimble's claim to the land. Assuming that further litigation will follow, the Commissioner should continue to hold said money in escrow until Kimble has exhausted or waived any rights he may have.

The lower court being without jurisdiction to try the case of *Kimble v. Rankin, State Land Commissioner*, the Writ is granted.

GRIFFIN SMITH, Chief Justice, concurring. Statutory duties imposed upon the Land Commissioner are ministerial. Act 282 of 1917. Section 5 contemplates that the Commissioner shall predicate his determinations upon reports made by a surveyor, together with the surveyor's attending field notes. The Commissioner is permitted to promulgate rules for ascertaining whether land formations are accretion or island, and the legisla-

tive language is such that, in the absence of fraud or collusion, the Commissioner's findings shall be final. Section 4 of the Act authorizes issuance of "such muniment of title as is now provided by law for the sale of state lands".

In *Lewis* v. *Owen,* 146 Ark. 469, 225 S. W. 648, it was said that the Commissioner's decision respecting land sought to be purchased by the petitioner in that case, could not be corrected or controlled by mandamus, even though error had occurred. The holding was cited in *Wunderlich et al.* v. *Cates,* 213 Ark. 695, 212 S. W. 2d 556.

It is axiomatic that although an official's discretionary actions pursuant to a statutory directive cannot be controlled by mandamus—and the corollary would be that such acts cannot be reached by injunction—no right of judicial review can be denied in an independent suit brought to test the facts motivating or supporting the ministerial finding—in this case the muniment of title "as is now provided by law for the sale of state lands". The venue would be where the land is situated if in a single county.

ROBINSON, Justice (dissenting). The "Island Act" is now Ark. Stats. §§ 10-601 to 10-605, inclusive. Section 10-601 provides: "All islands formed or which may form in the navigable rivers or streams of this State, subsequent to the admission of the State of Arkansas into the Union, are hereby declared to be the property of the State and subject to sale and disposition in the manner and form hereinafter provided." There is no provision in the law which indicates in any manner that the land commissioner may, in his discretion, arbitrarily declare land to be an island. It is perfectly clear to me that the statute only gives to the commissioner the authority to convey an island when there is no dispute as to the land being an island.

By the majority opinion this court has, in effect, said the land commissioner can let it be known today that he is going to execute and deliver a deed to the entire land on which is situated the City of Pine Bluff, in Jef-

ferson County, and the property owners could not come into Pulaski County, where service may be had on the commissioner, and stop such action until there had been a judicial determination of the question as to whether the land constitutes an island, within the provisions of the "Island Act". The opinion indicates that such a suit could be filed in the county where the land is located. If the land commissioner is acting outside the scope of his authority, the plaintiff should be permitted to enjoin his action in any county where service could be had upon him. Of course, to determine whether the commissioner is acting within, or without the scope of his authority, evidence would have to be taken to ascertain if the land in controversy is an island.

As a result of the majority opinion in this case, if the prospective purchaser pays to the land commissioner the purchase price of several thousand dollars, the commissioner will turn the money over to the State treasury, or a new suit may be filed in the Chicot Chancery Court and enjoin the commissioner from executing and delivering a deed to the property; or perhaps Kimble, the alleged owner of the property, who apparently has possession thereof, will retain such possession and wait for an ejectment suit to be filed against him in the circuit court, or he may take the initiative and file a suit in the chancery court to clear the title. Finally, if Kimble is declared to be the owner, the one who attempts to buy from the land commissioner will, in all probability, have quite a problem in getting his purchase money refunded. In fact, he might not get it. Act 169 of 1945, authorizing refunds by the land commissioner, seems to apply only to tax-forfeited lands. Furthermore, the State does not warrant the title but only gives a quit-claim deed. It occurs to me that if the legislature intended that the commissioner could sell just any land, by saying it is an island, some provision would have been made for the return of the purchase price, in the event a court of competent jurisdiction should finally declare the property not to be an island.

The majority opinion in this case cites *Lewis* v. *Owen,* 146 Ark. 469, 225 S. W. 648, to the effect that the land commissioner has ''discretion'', the implication being that the commissioner has discretion to say, in the first instance, what is, and what is not, an island; but the case merely holds that the commissioner has discretion as to whom he will convey the land, provided there is no controversy about whether it is an island. The actual language of the opinion in the Lewis case is as follows: ''The Legislature constituted the Commissioner of State Lands as the agent of the State in disposing of islands in the navigable streams of the State, and by Section 5 of the act of 1917 he was given a discretion in the discharge of his duties. This was done because it was necessarily contemplated that there might be conflicting applications to buy the same island, and that there might be questions of fact for the Commissioner to decide.'' I hardly see how this language can be construed to mean that the commissioner has any discretion whatever in determining whether certain land is an island.

If, as in the case at bar, there is a controversy between the commissioner, who says that certain land is an island, and others, who claim it is accretion, then the commissioner should file a suit in the county where the land is located to determine the question of ownership; or those who claim it as accretion to their property should be permitted to file suit against the commissioner, in any county where service can be had upon him, to enjoin and restrain him from executing and delivering a deed to the property until there can be a judicial determination of the ownership: and that is exactly what the plaintiffs have attempted to do in this case.

For the reasons set out, I respectfully dissent.