TENNESSEE GAS TRANSMISSION CO. *v.* STATE.

5-2082-2083-2084                                   335 S. W. 2d 312

Opinion delivered May 2, 1960.

[Rehearing denied June 6, 1960]

*C. H. Moses* and *Ohmer C. Burnside,* for Tenn. Gas Transmission. *Ohmer C. Burnside* and *C. H. Moses, Steptoe & Johnson* and *Henry C. Ikenberry,* for Trunkline Gas Co. *O. C. Burnside* and *Harry E. Meek,* for American La. Pipe Line Co.

*Bruce Bennett,* Atty. General by *Ovid T. Switzer* and *Carneal Warfield,* for appellee.

SAM ROBINSON, Associate Justice. The issue here is whether the appellants, Tennessee Gas Transmission Company, Trunkline Gas Company, and American Louisiana Pipe Line Company, are liable for nominal damages to the State of Arkansas for having constructed pipe lines used in transporting natural gas in interstate commerce under the bed of the Mississippi River at a point in Chicot County, Arkansas, the line crossing the river from Chicot County to the State of Mississippi. The trial

court ruled that the pipe line companies are liable for such damages. There is no dispute as to the facts; only questions of law are involved.

The State of Arkansas ex rel. the Attorney General of the State filed separate suits against the appellant companies, asking for judgments in ejectment requiring them to remove their pipe lines from that part of the bed of the river which is in Arkansas, and for large sums as damages. The cases were consolidated for trial. The Tennessee Gas Transmission Company has five lines crossing the river at the point involved; the Trunkline Gas Company has four lines; and the American Louisiana Pipe Line Company has two lines crossing the river. The trial court refused to order ejectment because U. S. Code, Title 15, § 717(f) provides that no natural gas company shall abandon any portion of its facilities without the permission and approval of the Federal Power Commission. There is no cross-appeal by appellee from the judgment. The court rendered judgments for the State against the Tennessee Company in the sum of $5,000, against Trunkline in the sum of $4,000, and against the American Company in the sum of $2,000 ($1,000 for each line), as nominal damages. Appellants make no point on appeal that the judgments are excessive as nominal damages, but do contend that the pipe line companies are not liable to the State of Arkansas in any amount by reason of the pipe lines having been laid across the bed of the Mississippi River.

The pipe line companies, acting pursuant to the Natural Gas Act (15 U. S. C. § 717), obtained from the Federal Power Commission certificates of convenience and necessity authorizing the construction of the gas lines. In making applications for certificates of convenience and necessity, maps of the exact routes the proposed lines would traverse were filed. The necessity of crossing the Mississippi River at a point in Chicot County is shown on the maps. Also, the pipe line companies obtained from the Secretary of the Army and the Chief of the United States Engineers "permits" showing no objec-

tion to laying the lines across the bed of the river. These so-called permits provide *inter alia*: "It is to be understood that this instrument does not give any property rights either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State, or local laws or regulations, nor does it obviate the necessity of obtaining State *assent* to the work authorized. It merely expresses the assent of the Federal Government so far as concerns the public rights of navigation."

The Rivers and Harbors Act of March 3, 1899 (U. S. Code, Title 33, § 403) does not authorize the Secretary of the Army or the United States Engineers to grant permits to build pipe lines or bridges across navigable streams. *Hubbard* v. *Fort,* 188 F. 987. The Act does provide, however, that such crossing of the river cannot be made without approval of the Chief of the United States Engineers and the Secretary of the Army.

The pipe line companies obtained permits or easements signed by the Governor, Secretary of State and Attorney General of the State of Arkansas, purporting to authorize the laying of the lines across the river. The Arkansas Legislature has not authorized the Governor, Secretary of State or Attorney General to grant such easements, although the Legislature could give to the officials named such authority. *State ex rel* v. *Southern S. & M. Co.,* 113 Ark. 149, 167 S. W. 854. But without such authorization the State is not bound by the act of the officials. *Pulaski County* v. *State,* 42 Ark. 118; *Rankin* v. *Chancery Court of Pulaski County,* 221 Ark. 110, 252 S. W. 2d 551; *Arkansas State Hwy. Commission* v. *McNeil,* 222 Ark. 643, 262 S. W. 2d 129.

It is the principal contention of appellants that Congress, by adoption of the Natural Gas Act, 15 U.S.C. § 717, gave the Federal Power Commission authority to grant permits to cross the beds of navigable waters with pipe lines used in transporting gas in interstate commerce and that the certificates of convenience and necessity

granted by the commission carry with them permits to make such crossing.

In *State ex rel.* v. *Southern S. & M. Co.*, 113 Ark. 149, 167 S. W. 854, the question was whether the State had the right to sell sand and gravel in navigable streams. It was held that the State has this right; that the State owns the beds of the navigable waters, subject to the paramount right of Congress to control navigation. Judge McCulloch quoted the language of the Supreme Court of the United States in *Scott* v. *Lattig*, 227 U. S. 229, 33 S. Ct. 242, 57 L. Ed. 490, as follows: ". . . 'it was settled long ago by this court, upon a consideration of the relative rights and powers of the Federal and State Governments under the Constitution, that lands underlying navigable waters within the several States belong to the respective States in virtue of their sovereignty, and may be used and disposed of as they may direct, subject, always, to the rights of the public in such waters and to the paramount power of Congress to control their navigation so far as may be necessary for the regulation of commerce among the States and with foreign nations.' "

The National Gas Act does not specifically give the Federal Power Commission authority to grant permits to lay pipe lines across the bed of the Mississippi River, nor does the Act imply such authority. In fact, if there is any implication one way or the other, it is to the effect that the Commission does not have such authority. The Act provides that the gas companies have the right of eminent domain in constructing their pipe lines in interstate commerce. State lands are subject to be taken by eminent domain. *State of Missouri ex rel and to Use of Camden County, Mo., et al* v. *Union Electric Light & Power Co., et al.*, 42 F. 2d 692; *City of Davenport* v. *Three-fifths of an Acre of Land*, 147 F. Supp. 794, *aff'd* 252 F. 2d 354; *Union Bridge Co.* v. *United States*, 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523.

Moreover, 43 U.S.C. § 1311 provides: "(a) It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath naviga-

ble waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States . . ."

Appellants rely on *Stockton* v. *Baltimore & N. Y. Rd.*, 32 F. 9, as support for the assertion that Congress may grant an easement over the bed of a navigable stream without the grantee compensating the State. We do not need to discuss this point, because here Congress has not granted any easements to the pipe line companies, whereas in the *Stockton* case Congress did grant such authority. A pipe line company having no authority from Congress cannot legally lay a pipe line across the bed of a navigable stream separating two states without the consent of the states involved. *Hubbard* v. *Fort*, 188 F. 987. But of course the pipe line company can proceed by eminent domain as authorized by the Natural Gas Act. This was not done in the case at bar.

Appellants argue that the State's action to recover damages because of the use of the bed of the river by appellants tends to obstruct or interfere with interstate commerce. There is no merit to this contention. The State has not refused to permit appellants to lay their lines across the river. Of course, appellants are engaged in interstate commerce and the State could not prevent such crossings. As heretofore pointed out, the appellants have the right of eminent domain, which they failed to exercise. Furthermore, on appeal appellants do not contend that if they owe anything as nominal damages, the amount of $1,000 per line is excessive. Certainly $1,000 is a nominal sum, in view of the fact that it appears to have cost more than a million dollars to lay a line across the river.

Appellants further argue that Ark. Stats. § 35-601 gives to domestic corporations the right to lay pipe lines

across navigable streams, and to deny foreign corporations engaged in interstate commerce the same right is to discriminate against interstate commerce. In effect, the statute gives to the corporations engaged in the numerous businesses mentioned in the statute the right of eminent domain. The appellants have this same right under the Natural Gas Act. On this point appellants rely heavily on *Oklahoma* v. *Kansas Nat. Gas Co.*, 221 U. S. 229, 31 S. Ct. 564, 55 L. Ed. 716. That case turns squarely on the proposition that the Oklahoma statute was for the avowed purpose of preventing gas developed in the State of Oklahoma from being transported in interstate commerce. The United States Supreme Court said: "We place our decision on the character and purpose of the Oklahoma statute." Here it cannot be said that the purpose of Ark. Stat. § 35-601 is to interfere with interstate commerce.

The appellants have mentioned other points, all of which we have examined carefully, but we find no error.

The judgments are therefore affirmed.

GEORGE ROSE SMITH, J., not participating; WARD, J., dissents.