The Honorable Jim Guy Tucker Governor of Arkansas State Capitol Little Rock, Arkansas 72201
Dear Governor Tucker:
This is in response to your request for an opinion on the following question:
 Are there any constitutional or statutory provisions that would prevent the Governor from issuing an executive order requiring state agencies to establish procedures whereby their employees could, during working hours and without loss of pay, volunteer up to four (4) hours of service per month to public schools and vocational technical schools to assist in the improvement of the educational program of the institutions? Specifically, would such procedure constitute an illegal expenditure of state funds?
The answer to this question is not clearly delineated under state law. It is my opinion, however, after a review of the most relevant constitutional and statutory provisions, that the answer to your question is in all likelihood "yes."
Your question posits the implementation of such a program by virtue of an executive order of the Governor. As an initial matter, therefore, it is necessary to examine the extent of the Governor's authority to make such orders. There is no Arkansas constitutional or statutory provision which grants the Governor the general power to make executive orders. Rather, this power is attendant the otherwise express or implied powers granted the Governor by the constitution or statutes over particular topics. It is stated in 81A C.J.S. States 130(b) that "[a]n executive order must be within the authority granted to the governor by the constitution or statutory provisions." See also Sever v. Com. Dept. of Environmental Resources, 100 Pa. Commnw. 217, 514 A.2d 656 (1986); Rapp v. Carey,404 N.Y.S.2d 565, 44 N.Y.2d 157, 375 N.E.2d 745 (1978); and Opinion of the Justices, 118 N.H. 6582, 392 A.2d 125 (1978). It is clear, additionally, that the Governor has no right to legislate, (see 81A C.J.S. States, supra), and that executive orders of the Governor cannot countermand legislative mandates. Cf. Tennessee Gas Transmission Co. v. State, 232 Ark. 156,335 S.W.2d 312 (1960) and Matthews v. Bailey, Governor, 198 Ark. 703,130 S.W.2d 1006 (1939). Although the Governor of the State of Arkansas possesses the "supreme executive power" of the State (see Arkansas Constitution, art. 6, 2) and therefore has some supervisory authority over certain employees in the executive branch, it is my opinion that the issuance of the executive order described above would be outside the Governor's authority, and might be challenged as contrary to existing constitutional and statutory provisions.
Article 16, 4 of the Constitution provides that:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
Although this provision is addressed mainly to the receipt of compensation by government officers and employees greater than that appropriated by the legislature, rather than the receipt of pay for work not actually performed, it is my opinion that the program described by your question might be challenged as violating the tenor of this provision. It has been held that similar limitations on the amount of public salaries "may not be evaded in any way whatsoever." White v. Williams, 187 Ark. 113,59 S.W.2d 23 (1933). This provision also prohibits the receipt of pay at "any rate other than par value." I have found no helpful case law from this jurisdiction or any other interpreting this phrase in the context of public employees salary. It may be contended, however, under the plain meaning of the term "par value," that salary received for work not performed is the receipt of salary at greater than "par value."
There are also express statutory provisions delineating the pay which may be received by public employees. See, e.g., A.C.A. 21-5-101 (1987), the "Regular Salary Procedures and Restrictions Act," which implements art. 16, 4 above, and prohibits a "rate of pay" in excess of the maximum established for the position during any one fiscal year; and A.C.A.21-5-209(b) (Cum. Supp. 1993), a part of the "Uniform Compensation and Classification Act," which prohibits receipt of a "rate of pay" higher than the appropriate rate in the grade assigned to an employee's class. In addition, the General Assembly has undertaken, by virtue of the "Uniform Attendance and Leave Policy Act" (A.C.A. 21-4-201 — 213 (1987) a comprehensive regulation of the authorized leave which may be taken by state employees. Section 21-4-203(13) (Cum. Supp. 1993) defines "working day" as "all regularly prescribed days of employment in which the employee performs those duties for which he was hired. For the purposes of this subchapter, a working day shall consist of eight (8) hours." In addition to the fact that the act does not authorize the taking of leave time for purposes of volunteer work, the taking of such unauthorized leave would affect the basis of the computation or accrual of leave time under the act. The accumulation of annual leave time, for example, is based upon a "complete month of service." See A.C.A. 21-4-204(b). Months of service which contain statutorily unauthorized leaves would not constitute "complete months of service" under the act.
It is my opinion, for all the foregoing reasons, that the implementation of the volunteer program you describe, in the manner you describe, would in all likelihood be contrary to Arkansas law.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh